YOUNG, J.
In its bypass application for leave to appeal, defendant insurer asks that we overrule Lewis v DAIIE[1] and apply as written the “one-year-back” limitation provided for in MCL 500.3145(1) for recovering no-fault personal protection insurance benefits. In Lewis, this Court adopted a judicial tolling doctrine under which the one-year statutory period is tolled from the time a specific claim for benefits is filed to the date the insurer formally denies liability. The trial court in this case relied on Lewis in rejecting defendant’s assertion that plaintiffs claim was limited by the statutory one-year-back rule.
No member of this Court disputes that § 3145(1) clearly and unambiguously states that a claimant “may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.” Because the Lewis rule contravenes this plain statutory directive and ignores almost a century of contrary precedent, it is hereby overruled. Defendant is entitled to summary disposition to the extent that plaintiff seeks benefits for losses incurred more than one year prior to the date on which this action was commenced.
I. FACTS AND PROCEDURAL HISTORY
Michael Devillers was an insured under a policy of no-fault automobile insurance issued to his parents by *565 defendant Auto Club Insurance Association. In September 2000, Michael, then age sixteen, was seriously injured in an automobile accident. His injuries included a traumatic brain injury. Michael’s mother, plaintiff in this case, cared for him after he was discharged from the hospital.
Defendant paid plaintiff benefits for home health care for the period of October 20, 2000, to February 14, 2001. On February 14, 2001, defendant received a physician’s prescription stating that Michael could function without close supervision. Defendant discontinued home health care payments effective February 15, 2001, based on the prescription indicating that Michael did not require supervision.[2] Plaintiff continued, without payment, to provide services for Michael, including driving him to and from school and the doctor’s office. On October 7, 2002, defendant wrote a letter to plaintiff memorializing the February 2001 discontinuation of benefits.
Plaintiff filed a complaint on November 12, 2002, seeking payment for services allegedly rendered for which she did not receive payment. At issue in this case is the nine-month period beginning on February 16, 2001 (the day after defendant discontinued paying home health care benefits), and ending on November 12, 2001 (one year prior to the filing of the complaint). Defendant moved for partial summary disposition with respect to the benefits sought for that nine-month period, arguing that plaintiff was precluded from recovering benefits under the one-year-back rule of MCL 500.3145(1).
Plaintiff contested defendant’s motion, arguing that, pursuant to Lewis, the one-year limitations period provided for in § 3145(1) was tolled from February 15, *566 2001 (the date that defendant discontinued home health care benefits and attendant care benefits) to October 7, 2002 (the date of defendant’s letter memorializing the termination).
The trial court denied defendant’s motion for partial summary disposition, citing Lewis. Defendant then filed an emergency application for leave to appeal in the Court of Appeals, arguing that the judicial tolling doctrine adopted in Lewis should be abrogated. Defendant additionally filed a bypass application for leave to appeal in this Court, noting that only this Court has the power to overrule Lewis.
The Court of Appeals denied leave to appéal. This Court entered an order staying trial, and we subsequently entered an order granting defendant’s application for leave to appeal. Because we believe that the Lewis Court exceeded its constitutional authority by engrafting onto the statutory one-year period a judicial tolling mechanism, we overrule Lewis. Moreover, because this case does not fall into that limited category of decisions in which prospective application is justified, we give our decision retroactive effect for this and pending cases in which a Lewis challenge has been preserved. Accordingly, we remand to the trial court with directions to enter partial summary disposition in favor of defendant with respect to the benefits sought for the period from February 16 to November 12, 2001.
II. STANDARD OF REVIEW
Issues of statutory construction and other questions of law are subject to review de novo by this Court.[3] *567 Similarly, we review de novo a trial court’s decision whether to grant summary disposition.[4]
m. ANALYSIS
A. BACKGROUND: JUDICIAL TOLLING AS APPLIED TO PRIVATE INSURANCE CONTRACTS AND STATUTORY FORM INSURANCE POLICIES
The germination of the idea that a judicial tolling doctrine should be applied to § 3145(1) can be traced to this Court’s 1976 decision in Tom Thomas Organization, Inc v Reliance Ins Co.[5] Rather than a statutory provision, Tom Thomas concerned a contractual provision in an inland marine policy of insurance limiting the time for bringing suit under the policy to twelve months “after discovery by the insured of the occurrence which gives rise to the claim. ” Noting that this Court had long enforced such policy limitations as written,[6] the Tom Thomas Court nevertheless rejected this prevailing rule in favor of the judicial tolling approach taken by the *568 New Jersey Supreme Court in" Peloso v Hartford Fire Ins Co,[7] which held that the twelve-month limitation of actions provision in a statutory form insurance policy[8] was tolled from the time an insured gave notice of loss until the insurer formally denied liability. The Peloso court, opining that statutory proof of loss and payment of claim provisions operated to shorten the time for bringing suit, stated that tolling the limitations period would ensure that the insured was “not penalized for the time consumed by the company while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what amount to pay ... .”[9]
In adopting wholesale the approach of the Peloso court, this Court in Tom Thomas stated that doing so was necessary in order to reconcile the twelve-month policy limitation with other policy provisions that incorporated “[substantial delays”[10] into the claim process:
The insured is generally allowed 60 to 90 days to file proof of loss. The insurer is generally given another 60 days to pay or settle the claim.
Notwithstanding diligence by both parties at all stages of the claim procedure, considerable time often elapses before the insured learns whether the insurer will pay. Even if the insured promptly reports a loss to his insurance agent, discussions concerning resolution of the claim may *569 take weeks. Additional time often passes before the insurance company provides a form for filing proof of loss. Even then the insured does not know whether it will be necessary to start an action; under the policy in this case, payment is not required until 60 days after “acceptance” by the insurer of the proof of loss. No time limit for acceptance is imposed.[11]
Thus, the Tom Thomas Court held that the insured’s action, which was filed more than twelve months after the date of the loss, but less than twelve months after the insurer denied liability, was not barred by the twelve-month policy limitation.[12]
In In re Certified Question (Ford Motor Co v Lumbermens Mut Cas Co),[13] this Court extended the PelosolTom Thomas tolling doctrine to Michigan’s statutory standard form fire insurance policy, former MCL 500.2832, which then provided that
[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.
Noting that § 2832 contained proof-of-loss and claim payment provisions identical to those contained in the New Jersey statutory policy form at issue in Peloso,[14] this Court held that
*570 [l]ogic requires that we apply the same analysis when faced with Michigan’s statutory policy provisions which are identical to the provisions reconciled in Peloso. By permitting the limitation period to be tolled, we reconcile the apparently identical incongruity between the statutory proof-of-loss and payment provisions, and the limitation clause.[15]
The Ford Court rejected the defendants’ argument that our 1913 decision in Dahrooge v Rochester German Ins Co[16] was controlling and had expressly repudiated judicial revision of the terms of the statute. In Dahrooge, this Court had refused to engraft onto the terms of the statutory standard fire insurance policy then in effect[17] a judicial tolling provision that would have tolled the commencement of the twelve-month limitations period until sixty days after the filing of the proof of loss:
Standard policies similar to that before us have been adopted, and their use made compulsory by statute in many States. It has been repeatedly held, in passing on their various provisions, that they should be construed according to the plain meaning of the language used, and that the trend of authority is towards enforcing the legislative command when clearly expressed, rather than to nullify and modify by strained constructions. The provision that an action cannot be sustained “unless commenced within twelve months next after the fire” is very plain, clear, and simple language. If it was the legislative intent that this should have other than the natural meaning, it would have been a simple matter to have so provided.[18]
Rather than explicitly overruling Dahrooge, the Ford Court “distinguished” that case on the basis that its
*571 narrow reasoning.. . did not attempt to reconcile the obvious incongruity between the proof-of-loss and payment provisions, and the limitation provision of the . statute. Accordingly, Dahrooge did not address the Tom ThomasPeloso tolling analysis.
Since our focus today must fairly encompass all interwoven statutory provisions, we cannot subscribe to a narrow analysis which unduly emphasizes a single statutory provision. While the limitation provision commands that the insured has a clear 12 months to institute suit, the proof of loss and payment clauses shrink this period.
. . . The statutory standard policy provisions are reconciled, as was stated in Peloso, 521, to reach a “fair resolution of the statutory incongruity”. The period of limitation begins to run from the date of the loss, but the running of the period is tolled from the time the insured gives notice until the insurer formally denies liability.[19]
Justice Ryan, joined by Chief Justice Coleman, opined in dissent that there existed no justification “for writing into the Michigan statutory form of fire insurance policy the tolling provision which the Court has announced today.”[20] Justice Ryan noted that in once *572 again subscribing to the approach of “the villain in the piece,” Peloso, the majority “completely disregards, indeed rejects, the plainly expressed intent of the Legislature in favor of the appearance of judicial consistency.”[21] Justice RYAN further noted that Dahrooge had addressed and rejected the claim made by the plaintiff, and that it ought to have been followed as binding authority:
It is noteworthy that the Court today does not overrule Dahrooge, it merely denigrates it as employing “narrow reasoning” for its failure to “reconcile the obvious incongruity between the proof of loss and payment provisions, and the limitation provision of the statute.” The Dahrooge Court’s “failure” to undertake such reconciliation was evidently its inability, like mine, to perceive that the proof of loss and payment provisions, and the limitation provision of the statute, are “incongruous”, “conflicting” or “inconsistent”.
The proof of loss and settlement provisions of the statutory policy provide that a proof of loss must be filed by the insured within 60 days of the loss and suit may not be brought until 60 days after the proof of loss is filed. The limitation provision declares that suit upon a loss must be brought within 12 months of the loss.
I am unable to see how those provisions are incongruous, inconsistent or conflicting. The first of them announces that the insurer is liable 60 days after the proof of loss is filed by the insured — a period obviously intended to afford opportunity for notification of the loss by the insured and assessment of it by the insurer. The limitation provision provides that the insured has 12 months from the date of the loss to start suit.
Where is the inconsistency?
*573 The majority opinion suggests to me rather forcefully that the Court’s concern is not that the Legislature has really contradicted itself in establishing a proof of loss plus 60 days no-suit period for perfecting the claim and a 12-month limitation of action provision, but that, in the Court’s view, a fairer, more desirable and more reasonable approach would be a tolling of the running of the period of limitation while the parties are negotiating a settlement of the claim. Needless to say, had the Legislature wanted to do it that way, it could easily have done so ... .[22]
Like Justice RYAN, we believe that the Tom Thomas and Ford majorities found inconsistencies where none existed and, under this thin veil, inserted their own policy-views into the otherwise contrary statutory language at issue.
B. EXTENSION OF THE JUDICIAL TOLLING DOCTRINE TO THE NO-FAULT “ONE-YEAR-BACK” PROVISION OF § 3145(1)
MCL 500.3145(1) provides, in relevant part, as follows:
An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivors loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. [Emphasis supplied.]
*574 As we noted in Welton v Carriers Ins Co,[23] § 3145(1) contains two limitations on the time for filing suit and one limitation on the period for which benefits may be recovered:
(1) An action for personal protection insurance [PIP] benefits must be commenced not later than one year after the date of accident, unless the insured gives written notice of injury or the insurer previously paid [PIP] benefits for the injury.
(2) If notice has been given or payment has been made, the action may be commenced at any time within one year after the most recent loss was incurred.
(3) Recovery is limited to losses incurred during the one year preceding commencement of the action.[24]
Thus, although a no-fault action to recover PIP benefits may be filed more than one year after the accident and more than one year after a particular loss has been incurred (provided that notice of injury has been given to the insurer or the insurer has previously paid PIP benefits for the injury), § 3145(1) nevertheless limits recovery in that action to those losses incurred within the one year preceding the filing of the action. It is this “one-year-back” provision that is at issue in this case.[25]
*575 The Tom Thomas judicial tolling doctrine was first applied to § 3145(1) by our Court of Appeals in Richards v American Fellowship Mut Ins Co.[26] In Richards, the plaintiff insured filed an action to recover PIP benefits more than one year after the automobile accident in which he was injured, seeking to recover the balance of a hospital bill for a term of hospitalization that had ended more than one year prior to the commencement of the action. Rejecting the defendant insurer’s defense that the one-year-back provision barred recovery, the Court held that the purpose of the no-fault law-that persons injured in automobile accidents be promptly and adequately compensated for their losses-required application of Tom Thomas tolling to § 3145(1):
If we were to accept defendant’s interpretation of the statutory provision, we would in effect be penalizing the insured for the time the insurance company used to assess its liability. To bar the claimant from judicial enforcement of his insurance contract rights because the insurance company has unduly delayed in denying its liability would run counter to the Legislature’s intent to provide the insured with prompt and adequate compensation.
Applying the approach taken by the [Tom\ Thomas Court to § 3145 would effectuate the legislative intent in enacting the no-fault act. Unable to profit from processing delays, insurance companies will be encouraged to promptly assess their liability and to notify the insured of their decision. At the same time, the insured will have a full year in which to bring suit.[27]
Accordingly, the Richards Court held that the one-year-back provision was tolled from the date that the plain *576 tiff gave notice of loss until liability was formally denied by the defendant.
This Court first addressed judicial tolling of § 3145 in Welton. We held that, assuming arguendo that Richards was correct and that the judicial tolling doctrine should be applied to the one-year-back rule, the plaintiffs notice to the defendant insurer was insufficient to trigger Tom Thomas tolling of his no-fault claim. The Welton Court noted that it found the Richards analysis “persuasive.”[28] However, apparently recognizing the imbalance created by the judicially created tolling rule, the Welton Court stated that something more than a general notice of injury, such as the type submitted by the plaintiff in that case, should be required to trigger tolling; rather, tolling should not begin until a claim for specific benefits is submitted to the insurer:
While a rule which protects insureds from delays attributable to their insurers is salutary, it also must be remembered that tolling represents a departure from the legislatively prescribed one-year-back cap on no-fault recoveries. Thus, any tolling of the statutory period would properly be tailored to prevent the former type of abuse while preserving the legislative scheme to the fullest possible extent.
Tolling the statute when the insured submits a claim for specific benefits would not appear to detract from the policies underlying the one-year limitation on recovery. By submitting a timely and specific claim, the insured serves the interest in preventing stale claims by allowing the insurer to assess its liability while the information supporting the claim is relatively fresh. A prompt denial of the *577 claim would barely affect the running of the limitation period, while a lengthy investigation would simply “freeze” the situation until the claim is eventually denied. In effect, the insured would be charged with the time spent reducing his losses to a claim for specific benefits plus the time spent deciding whether to sue after the claim is denied.[29]
In Lewis, this Court was again presented with the question whether the judicial tolling doctrine should be extended to the one-year-back provision of § 3145(1). This time, we adopted the rule, drawn from Richards and Welton, that the one-year-back limitation is tolled from the time the insured makes a specific claim for benefits until the date that liability is formally denied. To this rule, we added the “caveat” that
the insured must seek reimbursement with reasonable diligence or lose the right to claim the benefit of a tolling of the limitations period. Such a condition should alleviate the defendant’s fear that adoption of the tolling principle will result in “open-ended” liability in cases in which the claimant, having made a specific claim for benefits, there *578 after refuses to respond to the carrier’s legitimate requests for more information needed to process the claim![30]
In adopting this modified tolling rule, Lewis explained that application of judicial tolling to the one-year-back limitation served the Legislature’s purposes in enacting the no-fault law:
Most persons are confident that, in the event of a loss, their insurer will pay their claim without the necessity for litigation. It is only when an insurer denies liability that it is unequivocally impressed upon the insured that the extraordinary step of pursuing relief in court must be taken. A contrary result today would require the prudent claimant to file suit as a precautionary measure when the one-year deadline approached, regardless of the status of the claim. In addition to requiring a level of sophistication many claimants may not possess, such an approach would encourage needless litigation. One of the important reasons behind the enactment of the no-fault system was the reduction of automobile accident litigation![31]
Justice BRICKLEY, joined by Justice RILEY, vigorously dissented, noting that the majority’s approach constituted an impermissible departure from the plain and unambiguous language of § 3145(1). With some prescience, Justice BRICKLEY predicted that “this judicial amendment of a clear legislative directive will have a pernicious long-term effect.”[32] Justice BRICKLEY further opined that the majority had supplanted the will of the Legislature with its own assessment of policy and consumer expectations:
The majority observes that most people expect that insurance companies will pay their claims without having to begin litigation, and that it is only when a claim is *579 formally denied that litigation will be necessary. The majority thus concludes that to follow the statute as written would require a claimant to file a suit as a “precautionary measure” when the one-year deadline approached. Although the majority approach may further the general policy of reducing litigation, the statute is not necessarily inconsistent with other purposes and provisions of the act. For example, §§ 3142 and 3148 impose sanctions upon an insurer for late payments. Thus, § 3145 may be viewed as a complementary provision which “sanctions” an insured who is not diligent in pursuing a claim.... This Court was not privy to all of the arguments and purposes presented to the Legislature when it drafted these specific tolling requirements. When statutory language is as clear as it is here, it is outside our province to second-guess the Legislature as to which policy is paramount in regard to § 3145.[33]
With respect to the majority’s addition of a requirement that the insured pursue reimbursement with “reasonable diligence,” Justice BRICKLEY remarked that “[t]he necessity for this addition demonstrates the fact that this Court has engaged in judicial legislation.”[34]
Finally, Justice BRICKLEY noted a curious incongruity in the majority opinion, as carried forward from Welton:
The majority does not suggest that § 3145 contains any ambiguity or that the Legislature was not in full command of what it intended to do. To the contrary, the Legislature was cognizant of a need for some tolling. Again, as we said in Welton, supra, and as pointed out by the majority:
“[T]he fact that the Legislature has already provided a tolling provision for commencing a no-fault action, trig *580 gered by ‘notice of injury,’ suggests both that notice of injury was intended to have no greater effect and that there is less justification for this Court to interfere with the statutory scheme. [Welton, supra, 580, n 4.]”[35]
In attestation of Justice BRICKLEY’s admonition that the Lewis rule would have far-reaching implications, our Court of Appeals in Johnson v State Farm Mut Automobile Ins Co[36] further extended the judicial tolling doctrine. The plaintiffs decedent in Johnson was insured under a motorcycle policy and an automobile policy, both written by the same agent and issued by the defendant insurer. Although the plaintiff immediately notified the agent of the accident and requested coverage under the motorcycle policy, she did not specifically request payment of benefits under the automobile policy until shortly before filing suit, several years after the accident. Noting that this Court did not define in Lewis and Welton what constituted a “specific claim for benefits,” the Johnson Court held that the plaintiffs notice of injury under the motorcycle policy constituted sufficient notice of a claim for PIP benefits under the automobile insurance policy, and that the § 3145(1) one-year-back provision was therefore tolled. Additionally, the Court announced a completely new, and quite broad, tolling rule:
[E]ven if tolling under Lewis, supra, is not applicable to the case at bar, the one-year-back rule should nevertheless be tolled for that period from which defendant knew or reasonably should have known that plaintiff was entitled to benefits under the automobile policy until such time as defendant either formally and explicitly denied liability for benefits or affirmatively informed plaintiff that she might be entitled to benefits under the *581 policy and requested that she file a formal claim of benefits under the policy.[37]
Thus, not only did the Johnson Court disregard Lewis’s admonition that a “specific claim” must be filed in order to initiate tolling, the Johnson Court, in expanding the Lewis doctrine to include a vague “knew or should have known” standard, dismantled the certainty that the Legislature intended to create in enacting the one-year limitation.
C. LEWIS MUST BE OVERRULED AS WRONGLY DECIDED
As is no doubt evident from the foregoing discussion of the questionable lineage of Lewis, as well as the expansion of the Lewis doctrine by our Court of Appeals, we are today compelled to overrule Lewis to reaffirm the Legislature’s prerogative to set policy and our long-established commitment to the application of statutes according to their plain and unambiguous terms to preserve that legislative prerogative.
The long road leading to the judicial negation of the statutory one-year-back rule began with this Court’s abrupt departure from settled precedent and adoption of the inapposite minority Peloso rule in Tom Thomas. Then, in Ford, finding ourselves “figuratively examining [our] own tail,”[38] we determined that it would be illogical to apply Peloso in the off-point private contract setting without also applying that rule in the context for which it was designed, the statutory fire *582 insurance form setting. Along the way, we shrugged off the weight of binding precedent, purporting to distinguish Dahrooge as a “narrow” decision that simply did not address the judicial tolling question.[39] Finally, we deigned in Lewis, purely for policy reasons and in direct contravention of the statutory language at issue, to extend application of Tom Thomas and Ford to the one-yeár-back rule of § 3145(1). Our substitution of the “specific claim” rule and the addition of the “reasonable diligence” requirement to the Tom Thomas/Ford approach stand as testimony to the lengths to which the Lewis Court went in crafting its own amendment to § 3145(1). Further distortion of the Lewis rule by our Court of Appeals in Johnson demonstrates the unmanageability of the judicial tolling doctrine and represents the vitiation of the clear statutory directive limiting a PIP claimant’s recovery to benefits for losses incurred one year or less before the date on which the action was commenced.
In short, we wholly agree with the views expressed by the dissenting justices in Tom Thomas, Ford, and Lewis. Statutory-or contractual-language must be enforced according to its plain meaning, and cannot be judicially revised or amended to harmonize with the prevailing policy whims of members of this Court. The Lewis majority impermissibly legislated from the bench in allowing its own perception concerning the lack of “sophistication” possessed by no-fault claimants, as well as its speculation that the average claimant expects payment without the necessity for litigation, to super *583 sede the plainly expressed legislative intent that recovery of PIP benefits be limited to losses incurred within the year prior to the filing of the lawsuit.
Although a claimant may well find himself in a bind similar to that of the Lewis plaintiffs, and of the plaintiff in the case at bar, should that claimant delay the commencement of an action (as permitted by § 3145) more than one year beyond the accident leading to the injury, our observation is simply this: the Legislature has made it so. The Lewis Court acted outside its constitutional authority[40] in importing its own policy views into the text of § 3145(1). “[T]he constitutional responsibility of the judiciary is to act in accordance with the constitution and its system of separated powers, by exercising the judicial power and only the judicial power.”[41]
In any event, we are unable to perceive any sound policy basis for the adoption of a tolling mechanism with respect to the one-year-back rule. Although the Lewis majority, echoing the concerns of the Tom Thomas and Ford Courts, speaks of potential delays attributable to the “ ‘lengthy investigation’ ” of a PIP claim,[42] the only delay possible under the no-fault law is the thirty-day payment period following receipt of proof of loss by the insurer.[43] To repeat Justice Ryan’s query in Ford, “Where is the inconsistency?”[44]
*584 Just as the Ford plaintiff had many months, even after expiration of the potential delays permitted in the statutory fire insurance scheme, in which to file suit, plaintiff in the case at bar had a full year following the February 2001 termination of payment for home health-care benefits within which to seek reimbursement. In no way was plaintiffs ability to file suit thwarted by dilatory tactics on the part of defendant or by the exercise of defendant’s statutory right to delay payment for thirty days following receipt of proof of loss. As soon as PIP payments stopped, plaintiff had the surest notice that her claim was no longer being honored by the insurer.
We conclude, therefore, that Lewis and its progeny were wrongly decided. We must decide whether the doctrine of stare decisis nevertheless obliges us to adhere to its holding. Although stare decisis is generally “ ‘the preferred course,’ ”[45] we will nevertheless depart from erroneous precedent “when governing decisions are unworkable or are badly reasoned.”[46] In determining whether stare decisis compels adherence to the Lewis tolling doctrine, we may examine, among other factors, the extent to which the Lewis Court erred; the “ ‘practical workability’ ” of that decision; whether reliance interests would work an undue hardship if the decision were overruled; and whether changes in the law or facts no longer justify the questioned decision.[47]
*585 Lewis does not reflect a simple “misunderstanding” of the statute at issue;[48] the Lewis decision demonstrates an act of judicial defiance in which this Court substituted its own judgment concerning “fairness” for the plainly expressed will of the Legislature. Such an act of judicial usurpation of the legislative function should not be permitted to stand.
Moreover, Lewis has not “become so embedded, accepted or fundamental to society’s expectations that overruling [it] would produce significant dislocations.”[49] Rather, it is highly likely that the average no-fault claimant who has profited from Lewis was quite unaware of this decision, and simply received a windfall in being permitted to collect benefits that the statute proclaims are nonrecoverable. We need not, and indeed should not, slavishly adhere to the doctrine of stare decisis where no legitimate reliance interest is affected. As we noted in Robinson,
if the words of the statute are clear, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts. In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest. When that happens, a subsequent court, rather than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court’s misconstruction. [50]
Additionally, the Lewis judicial tolling doctrine defies “practical workability,” as evidenced by this Court’s efforts to cabin tolling and by the confusion of the Court of Appeals in Johnson. On the basis that Lewis failed to delineate what constituted a “specific claim for ben *586 efits,” the Johnson Court took license to apply the judicial tolling doctrine to a situation that even the Lewis Court would presumably have found lacking. Furthermore, it appears that the impact of Lewis is increasingly producing a tax on the no-fault system as claimants are being permitted to seek recovery for losses incurred much more than one year prior to commencing suit. Thus, far from “produc[ing] chaos,”[51] overruling Lewis will prevent potential chaos by according insurers, and the public that funds the no-fault system through payment of premiums, the certainty that the Legislature intended.
We today overrule Lewis and its progeny as wrongly decided. The one-year-back rule of MCL 500.3145(1) must be enforced by the courts of this state as our Legislature has written it, not as the judiciary would have had it written.
D. RETROACTIVITY
In our order granting leave to appeal, we directed the parties to address whether a decision overruling Lewis should be given only prospective application.
Typically, our decisions are given retroactive effect, “applying to pending cases in which a challenge ... has been raised and preserved.”[52] Prospective application is a departure from this usual rule and is appropriate only in “exigent circumstances.”[53] This case presents no “exigent circumstances” of the sort warranting the “extreme measure” of prospective-only application.[54]
*587 As we reaffirmed recently in Hathcock, prospective-only application of our decisions is generally “ ‘limited to decisions which overrule clear and uncontradicted case law.’ ”[55] Lewis is an anomaly that, for the first time, engrafted onto the text of § 3145(1) a tolling clause that has absolutely no basis in the text of the statute. Lewis itself rests upon case law that consciously and inexplicably departed from decades of precedent holding that contractual and statutory terms relating to insurance are to be enforced according to their plain and unambiguous terms.
Thus, Lewis cannot be deemed a “clear and uncontradicted” decision that might call for prospective application of our decision in the present case. Much like Hathcock, our decision here is not a declaration of a new rule, but a return to an earlier rule and a vindication of controlling legal authority — here, the “one-year-back” limitation of MCL 500.3145(1).[56]
Accordingly, our decision in this case is to be given retroactive effect as usual and is applicable to all pending cases in which a challenge to Lewis’s judicial tolling approach has been raised and preserved.[57]
*588 E. RESPONSE TO JUSTICE CAVANAGH’S DISSENT
Given the characterization by Justice CAVANAGH’s dissent of the majority’s position as “overwrought [with] scorn”[58] and an “outright fabrication,”[59] it is easy to lose sight of the fact that there is substantial agreement between Justice CAVANAGH and the majority. Both the majority and Justice CAVANAGH agree that the plain text of § 3145(1) provides that an insured “may not recover benefits for any portion of the loss incurred more than .1 year before the date on which the action was commenced.” The fundamental difference between the position of the majority and Justice CAVANAGH lies in how one perceives the judicial role.
The majority believes that statutes are to be enforced as written, unless, of course, a statute violates the Constitution. Such a view of the judicial role is not merely a preference shared by a majority of this Court, but rather a constitutional mandate.[60] Justice CAVANAGH, on the other hand, apparently believes that a court’s equitable power is an omnipresent and unassailable judicial trump card that can be used to rewrite a constitutionally valid statute simply because a particular judge considers the statute to be “unfair.”
The view of the majority — that statutes are to be enforced as written unless they are unconstitutional— *589 represents a more limited view of the role of the judiciary. It is grounded not just in the separation of powers mandate of our Constitution,[61] but also on prudential concerns. The majority believes that policy decisions are properly left for the people’s elected representatives in the Legislature, not the judiciary. The Legislature, unlike the judiciary, is institutionally equipped to assess the numerous trade-offs associated with a particular policy choice. Justice CAVANAGH, however, apparently believes that judges are omniscient and may, under the veil of equity, supplant a specific policy choice adopted on behalf of the people of Michigan by their elected representatives in the Legislature.[62] We could not disagree more.
*590 Although courts undoubtedly possess equitable power,[63] such power has traditionally been reserved for "unusual circumstances” such as fraud or mutual mistake.[64] A court’s equitable power is not an unrestricted license for the court to engage in wholesale policymaking, as Justice CAVANAGH implies.[65]
*591 Section 3145(1) plainly provides that an insured “may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.” There has been no allegation of fraud, mutual mistake, or any other “unusual circumstance” in the present case. Accordingly, there is no basis to invoke the Court’s equitable power. Justice CAVANAGH errs, as did the Lewis Court, in assuming that equity may trump an unambiguous and constitutionally valid statutory enactment.
Indeed, if a court is free to cast aside, under the guise of equity, a plain statute such as § 3145(1) simply because the court views the statute as “unfair,” then our system of government ceases to function as a representative democracy. No longer will policy debates occur, and policy choices be made, in the Legislature. Instead, an aggrieved party need only convince a willing judge to rewrite the statute under the name of equity. While such an approach might be extraordinarily efficient for a particular litigant, the amount of damage it causes to the separation of powers mandate of our Constitution and the overall structure of our government is immeasurable. Justice CAVANAGH apparently sees no problem with using a court’s equitable power in this manner. We, however, believe the judicial role to be *592 far more limited than our colleague in dissent.[66]
The judicial philosophy of the majority has been the subject of much discussion from some in the bench and bar. This is entirely to be expected and is desirable in a vibrant, healthy republic. Yet, in his discourse on the flaws of the majority’s judicial philosophy, Justice CAVANAGH has avoided his responsibility of explaining his own consistent approach to interpretation. Parties before this Court, as well as the people of Michigan generally, have been clearly apprised over the years that the philosophy set forth in this opinion will constitute the process by which this Court interprets the law. Justice CAVANAGH would do well to describe, with as much care as the majority, his own philosophy.
What, for example, are the standards upon which he is determined consistently to give meaning to the law in future cases coming before this Court? What are the standards upon which litigants can reasonably predict his future interpretations, the rule of law being depen *593 dent upon such predictability? What are the standards that he is prepared to articulate, in advance of his decisions, in order to communicate that his decisions are guided by the law and are not merely a function of the results that he might prefer in a given case? What are the standards upon which he would rely in order to ensure the appearance and reality of integrity in his judicial decision-making? What judicial principles does he represent beyond opposition to a philosophy that he wrongly characterizes as one of “automation-like textualist analysis”[67] of the law? The justices in the majority, by opinions such as this, have addressed these questions. Justice CAVANAGH should do the same.
Justice CAVANAGH, no less than the justices in the majority, owes it to the people of Michigan to articulate the precise standards by which he attempts to do justice under the law.
rv conclusion
Our decision in Lewis to apply a judicial tolling mechanism to the one-year-back limitation of MCL 500.3145(1) contravenes the unambiguous text of that statutory provision and represents an unconstitutional usurpation of legislative authority. Accordingly, Lewis and its progeny, Johnson, are overruled. Moreover, we perceive no reason to depart from the general rule that our decisions are to be given retroactive effect. Defendant is entitled to summary disposition to the extent that plaintiffs claim is barred by the one-year-back rule. Accordingly, we reverse the decision of the trial court and remand this case to that court for entry of an order of partial summary disposition for defendant consistent with this opinion.
*594 Taylor, C.J., and Corrigan and Markman, JJ., concurred with Young, J.

 426 Mich 93; 393 NW2d 167 (1986).

 However, based upon a later prescription, defendant began paying plaintiff for home health care and attendant care as of October 15, 2003, and it continues to make these payments.

 Preserve the Dunes, Inc v Dep’t of Environmental Quality, 471 Mich 508, 513; 684 NW2d 847 (2004); Mack v Detroit, 467 Mich 186, 193; 649 NW2d 47 (2002).

 Jarrad v Integon Nat’l Ins Co, 472 Mich. 207, 212; 696 NW2d 621 (2005); Maiden v Rozwood, 461 Mich 109, 118; 597 NW2d 817 (1999).

 396 Mich 588; 242 NW2d 396 (1976).

 See Tom Thomas, supra at 592 n 4. Policy limitations of less than six years have been enforced by this Court without discussion of reasonableness. See, e.g., Lombardi v Metropolitan Life Insurance Co, 271 Mich 265; 260 NW 160 (1935) (group disability plan; two-year limitation); Bashans v Metro Mutual Insurance Co, 369 Mich 141; 119 NW2d 622 (1963) (accidental injury and illness; two-year limitation); Dahrooge v Rochester German Insurance Co, 177 Mich 442; 143 NW 608 (1913) (standard fire insurance policy; one-year limitation); Betteys v Aetna Life Insurance Co, 222 Mich 626; 193 NW 197 (1923) (disability or death indemnity policy; one-year limitation); Harris v Phoenix Accident & Sick Benefit Ass’n, 149 Mich 285; 112 NW 935 (1907) (accident and sick benefit policy; six-month limitation).
While it acknowledged this contrary line of precedent, Tom Thomas did not overrule any of those cases. This appears to have been a common practice of this Court during this era. See, e.g., Raska v Farm Bureau Mut Ins Co of Michigan, 412 Mich 355; 314 NW2d 440 (1982); People v Jones, 395 Mich 379; 236 NW2d 461 (1975), and People v Chamblis, 395 Mich *568 408; 236 NW2d 473 (1975), both overruled in part in People v Cornell, 466 Mich 335 (2002); Simon v Security Ins Co, 390 Mich 72; 210 NW2d 322 (1973).

 56 NJ 514; 267 A2d 498 (1970).

 A “statutory form” insurance policy refers to an insurance policy that includes mandatory terms and provisions compelled by statute. See, e.g., former MCL 500.2832, discussed later in this opinion, concerning fire insurance policies issued in Michigan.

 Peloso, supra at 521.

 Tom Thomas, supra at 592.

 Id. at 592-593.

 Justice Lindemer, joined by Justice Coleman, dissented, noting that “[t]o adopt [the Peloso approach] is, in effect, to rewrite the contract in favor of the party which, for a six-month period, was guilty of sleeping on its bargained-for rights.” Tom Thomas, supra at 601.

 413 Mich 22; 319 NW2d 320 (1982).

 See Ford, supra at 31, 32 n 4. The statutory policy provided a sixty-day period for the insured to supply proof of loss and a sixty-day period following proof of loss and ascertainment of the loss for the insurer to pay the claim. MCL 500.2832.

 Id. at 31-32 (emphasis in original).

 177 Mich 442; 143 NW 608 (1913).

 1905 PA 277. This predecessor of former MCL 500.2832 contained essentially the same terms as the version of § 2832 at issue in Ford.

 Dahrooge, supra at 451.

 Ford, supra at 33-38. Because Dahrooge pointedly refused to adopt judicial tolling in contravention of the statutory limitation, it is hard to understand why Ford and Dahrooge are not irreconcilably in conflict. However, as noted previously, see n 6 of this opinion, during this era, this Court frequently paid little attention to the inconsistencies among its cases and declined to reduce confusion in its jurisprudence by overruling conflicting decisions. Dahrooge has never been overruled. Dahrooge, and cases like Dahrooge extending back to the turn of the 20th century, still appear to be good law, despite Lewis.

 Id. at 39.

 Id. at 45.

 Id. at 46-49.

 421 Mich 571; 365 NW2d 170 (1985).

 Id. at 576 (emphasis in original).

 MCL 500.3141 permits an insurer to require written notice to be given “as soon as practicable” after an accident involving an insured motor vehicle. MCL 500.3142(2) provides generally that PIP benefits are overdue if not paid within thirty days after an insurer receives reasonable proof of the fact and amount of loss sustained. Moreover, the insurer is subject to penalties for delaying payment: MCL 500.3142(3) provides for a twelve-percent annual interest rate on delayed payments, and MCL 500.3148(1) renders the insurer liable for a claimant’s attorney fees if the court determines that “the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.”

 84 Mich App 629; 270 NW2d 670 (1978).

 Id. at 634-635.

 Welton, supra at 578. Although we recognized that MCL 500.3142(2) dictates that benefits are overdue if not paid within thirty days after a claim is submitted to an insurer, we ventured that, “[a]s a practical matter,... it appears unlikely that insureds will commence suit immediately because of the expense involved in bringing an action and the very real possibility that the claim will be paid without the necessity of legal action.” Id. at 579 n 3.

 Id. at 578-579.
Interestingly, in further defense of limiting application of Tom. Thomas tolling in the one-year-back context to those cases in which a claim for specific benefits was submitted, the Welton Court noted (1) the fact that § 3145(1) included a “built-in” tolling provision permitting later suit once notice was given or partial payment was made (in contrast to the fire insurance context, in which the limitations provision operated as an •absolute bar to suits not brought within one year of discovery or inception of the loss); (2) the fact that the specified procedure for claim and recovery of fire insurance benefits included greater built-in delays than the no-fault law (some 150 days for fire insurance, versus the thirty-day payment requirement for no-fault benefits); and (3) the fact that the Legislature had already provided in § 3145(1) that tolling was triggered by “notice of injury,” suggesting that notice of injury was to have no greater tolling effect. Id. at 580 n 4. None of these considerations apparently caused the Welton Court to reconsider the propriety of applying its tolling rule to MCL 500.3145(1).

 Lewis, supra at 102-103.

 Id. at 101-102.

 Id. at 104.

 Id. at 107-108.

 Id. at 108.

 Id.

 183 Mich App 752; 455 NW2d 420 (1990).

 Id. at 762-763; see also id. at 765. The panel noted that “once the insured files such a claim, the provisions oí Lewis, supra, apply and the one-year-back rule is again tolled until such time as that claim is denied.” Id. at 765 n 4 (emphasis supplied).

 Ford, supra at 43 (Ryan, J., dissenting).

 See Ford, supra at 33 (noting that Dahrooge “did not attempt to reconcile the obvious incongruity between the proof-of-loss and payment provisions, and the limitation provision of the statute”); see also Tom Thomas, supra at 597 n 10 (disregarding Dahrooge as binding authority on the ground that it failed to reconcile the various policy terms at issue).

 See Const 1963, art 3, § 2; See also Const 1963, art 6, § 1, directing the judiciary to exercise its “judicial power ....”

 Nat’l Wildlife Federation v Cleveland Cliffs Iron Co, 471 Mich 608, 637; 684 NW2d 800 (2004).

 Lewis, supra at 101, quoting Welton, supra at 578.

 MCL 500.3142(2). As noted by Justice Brickley in Lewis, supra at 107, the no-fault act requires the insurer to pay penalties for any delayed payment. See MCL 500.3142(3); MCL 500.3148(1).

 Ford, supra at 47 (Ryan, J., dissenting).

 Robinson v Detroit, 462 Mich 439, 463; 613 NW2d 307 (2000), quoting Hohn v United States, 524 US 236, 251; 118 S Ct 1969; 141 L Ed 2d 242 (1998).

 Robinson, supra at 464, citing Holder v Hall, 512 US 874, 936; 114 S Ct 2581; 129 L Ed 2d 687 (1994).

 Robinson, supra at 464; see also Mitchell v W T Grant Co, 416 US 600, 627-628; 94 S Ct 1895; 40 L Ed 2d 406 (1974).

 See Robinson, supra at 465.

 Id. at 466.

 Id. at 467.

 Id. at 466 n 26.

 Wayne Co v Hathcock, 471 Mich 445, 484; 684 NW2d 765 (2004).

 Id. at 484 n 98.

 See Gladych v New Family Homes, Inc, 468 Mich 594, 606 n 6; 664 NW2d 705 (2003).

 Hathcock, supra at 484 n 98, quoting Hyde v Univ of Michigan Bd of Regents, 426 Mich 223, 240; 393 NW2d 847 (1986) (emphasis supplied).

 See Hathcock, supra at 484.

 Id. In our case law, this form of retroactivity is generally classified as “limited retroactivity.” See Stein v Southeastern Michigan Family Planning Project, Inc, 432 Mich 198, 201; 438 NW2d 76 (1989).
We disagree with Justice Weaver’s assertion that our decision to overrule Lewis should be given prospective application. As we explained in Hathcock, supra at 484 n 97, to accord a holding only prospective application is, essentially, an exercise of the legislative power to determine what the law shall be for all future cases, rather than an exercise of the judicial power to determine what the existing law is and apply it to the case at hand. Const 1963, art 3, § 2 prohibits this Court from exercising powers properly belonging to another branch of government except when expressly authorized by the Constitution. As we further explained in *588 Hathcock, supra at 484 n 98, prospective opinions are, in essence, advisory opinions, and our only constitutional authorization to issue advisory opinions is found in Const 1963, art 3, § 8, which does not apply in this case.
We also note, however, that payments properly made under Lewis prior to this opinion are not subject to recoupment or setoff.

 Post at 618.

 Id.

 Const 1963, art 3, § 2 and art 6, § 1.

 Const 1963, art 3, § 2.

 The fact that Justice Cavanagh is willing to make policy choices through a court’s equitable powers is evident from his extensive discussion of the “costs” associated with enforcing the plain text of § 3145(1). Post at 602-603. While the majority believes that the Legislature is better equipped to evaluate the costs and benefits associated with a specific policy choice, and that the Legislature actually evaluated such trade-offs in enacting § 3145(1), Justice Cavanagh apparently believes that a judge is free to second-guess a legislative policy choice based on the judge’s own preconceived notions of fairness.
Not surprisingly, Justice Cavanagh cites no support for his conclusion that enforcing the unambiguous language of § 3145(1) will increase costs to insurers and insureds. In fact, there has been no evidence presented to this Corut on which such a determination could be made. If anything, it would seem that the uncertainty associated with subjecting insurers and insureds to the whims of individual judges and their various conceptions of “equity” would increase overall insurance costs because insurers would no longer be able to estimate accurately actuarial risk. See, e.g., Popik & Quackenbos, Reasonable expectations after thirty years: A failed doctrine, 5 Conn Ins L J 425, 431-432 (1998) (“When the courts invalidate unambiguous exclusions, the insurance industry’s ability to calculate and manage risk is severely impaired. The insurers’ only alternative to this uncertainty is to hedge their bets by increasing premiums or restricting coverage.”); Rappaport, The ambiguity rule and insurance law: Why insurance contracts should not be construed against the drafter, 30 Ga L R 171, 203 (1995) (“Uncertainty about how judges will interpret insurance contracts may significantly increase the costs of insurance.”); *590 Comment, A critique of the reasonable expectations doctrine, 56 U Chi L Rev 1461, 1489 (1989) (“ ‘[J]udicial... intervention renders costs quite unpredictable and makes insurers fearful, tightening the market.’ ” [citation omitted]).

 Const 1963, art 6, § 5.

 Cincinnati Ins Co v Citizens Ins Co, 454 Mich 263, 270; 562 NW2d 648 (1997) (stating that this Court has been reluctant to recognize equitable estoppel, a corollary of fraud, “absent intentional or negligent conduct designed to induce a plaintiff from bringing a timely action”) (emphasis omitted); Flynn v Korneffel, 451 Mich 186, 199; 547 NW2d 249 (1996) (“this Court has exercised its equitable power in unusual circumstances such as fraud . ..”) (emphasis in original); Solo v Chrysler Corp (On Rehearing), 408 Mich 345, 352-353; 292 NW2d 438 (1980); Panozzo v Ford Motor Co, 255 Mich 149, 150-151; 237 NW 369 (1931); Gee v Gee, 254 Mich 415, 416-417; 236 NW 820 (1931).

 Justice Cavanagh asserts that because we granted equitable relief in Bryant v Oakpointe Villa Nursing Ctr, Inc, 471 Mich 411, 432; 684 NW2d 864 (2004), there is no reason not to apply equity in this case. This argument illustrates the fundamental disagreement between a majority of this Court and Justice Cavanagh, as well as the Lewis Court, concerning the proper application of equitable relief.
In Bryant, our grant of equitable relief was a pinpoint application of equity based on the particular circumstances surrounding the plaintiffs claim; namely, the preexisting jumble of convoluted case law through which the plaintiff was forced to navigate. Accordingly, our limited application of equity in Bryant was entirely consistent with the “unusual circumstances” standard for equitable relief discussed above. In Lewis, however, the Court chose to adopt an a priori rule of equity without regard to the particular circumstances of litigants in a given case. In granting blanket equity to an entire class of cases, therefore, the Lewis Court essentially rewrote § 3145(1). Such a categorical redrafting of a statute in the name of equity violates fundamental principles of equitable relief and is a gross departure from the proper exercise of the “judicial power.” Const 1963, art 3, § 2 *591 and art 6, § 1. Accordingly, Justice Cavanagh’s unmitigated praise for the Lewis Court’s holding is, in our view, quite misplaced.
Moreover, we note that, in Bryant, there was no controlling statute negating the application of equity. Instead, the disputed issue in Bryant — whether a claim sounds in medical malpractice or ordinary negligence — was controlled by this Court’s case law. On the other hand, in the present case, there is a statute that controls the recovery of PIP benefits: § 3145(1). Section 3145(1) specifically states that a claimant “may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced,” and this Court lacks the authority to say otherwise.

 Justice Cavanagh also argues that “this case is an ideal candidate for applying the ... legislative reenactment rule.” Post at 613. However, as we recently explained:
[N]either “legislative acquiescence” nor the “reenactment doctrine” may “be utilized to subordinate the plain language of a statute.” [People v Hawkins, 468 Mich 488, 507-510; 668 NW2d 602 (2003).] “Legislative acquiescence” has been repeatedly rejected by this Court because “Michigan courts [must] determine the Legislature’s intent from its words, not from its silence.” Donajkowski v Alpena Power Co, 460 Mich 243, 261; 596 NW2d 574 (1999).. . . “[I]n the absence of a clear indication that the Legislature intended to either adopt or repudiate this Court’s prior construction, there is no reason to subordinate our primary principle of construction — to ascertain the Legislature’s intent by first examining the statute’s language — to the reenactment rule.” [Hawkins, supra] at 508-509. [Neal v Wilkes, 470 Mich 661, 668 n 11; 685 NW2d 648 (2004).]

 Post at 609.