Young, J.
(concurring in part and dissenting in part). A majority of justices today reach the correct conclusion that there may be circumstances in a criminal case that support introducing evidence of a victim’s intoxication in order to show gross negligence. I concur in this portion of the lead opinion.
However, while I concur in the decision to grant defendant a new trial, I dissent from the gratuitous decision to overrule People v Derror[1] The decision to *218 overrule Derror redounds only to the benefit of a marijuana abuser who gets behind the wheel of a motor vehicle. In enacting MCL 333.7212, the Legislature made the policy decision to include marijuana “and every .. . derivative” of marijuana[2] in the list of schedule 1 controlled substances. The Legislature, furthermore, forbade anyone to operate a motor vehicle with “any amount” of a schedule 1 controlled substance— such as a derivative of marijuana — in his or her body.[3] The decision to overrule Derror and rule that the metabolite 11-carboxy-tetrahydrocannabinol (11-carboxy-THC) is not a “derivative” of marijuana nullifies this clear legislative intent. In overruling Derror, a majority of justices usurp the role of policymaker from the people and their elected representatives and enact a policy contrary to that articulated in Michigan’s controlled substances statutes. Even worse, because there is undisputed evidence that this defendant had trace amounts of actual tetrahydrocannabinol in his system, a majority of justices have used this case as a vehicle to overrule a decision with which they disagree even though there is plainly no reason to reach this question. This is a type of judicial overreach and activism of the worst kind.
Accordingly, I dissent from the conclusion that 11-carboxy-THC is not a derivative of marijuana within the meaning of Michigan’s controlled substance laws. I likewise dissent from the decision to overrule Derror.
I. MICHIGAN’S CONTROLLED SUBSTANCE LAWS
MCL 257.625(8) forbids any person to “operate a vehicle... if the person has in his or her body any *219 amount of a controlled substance listed in schedule 1 under... MCL 333.7212 ....” MCL 333.7212(l)(c) lists “marihuana” as a schedule 1 controlled substance. The Public Health Code, within which MCL 333.7212(l)(c) appears, defines “marihuana” as
all parts of the plant Canabis [sic] sativa L., growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin [4]
Tetrahydrocannabinol, or “THC,” is the main psychoactive substance found in the cannabis plant, [5] and it is undisputed that THC is a schedule 1 controlled substance.[6] The body produces 11-carboxy-THC when it metabolizes THC. Accordingly, it is a “metabolite” of THC.[7] In Derror, this Court addressed whether 11-carboxy-THC, as a metabolite of THC, is also a “derivative” of THC.[8] Because “derivative” is undefined in the Public Health Code, the Court in Derror used medical dictionaries to define the term and thereby determine whether 11-carboxy-THC is a derivative of THC.[9]
The Court in Derror properly concluded that the term “derivative” encompasses metabolites. Although medical dictionaries define multiple senses of the term “derivative,” the Court determined that the definition *220 “chemical substance related structurally to another substance and theoretically derivable from it,” contained in Merriam-Webster’s Online Medical Dictionary, best effectuates the Legislature’s intent.[10] In applying this definition, the Court concluded that 11-carboxy-THC is a derivative because “it has an identical chemical structure to THC except for the eleventh carbon atom.” [11]
II. THE DECISION TO OVERRULE DERROR IS A RETREAT FROM STARE DECISIS
A majority of justices today overrule Derror and conclude that 11-carboxy-THC is not a derivative of THC. In doing so, they appear to retreat from their previously stated fidelity to stare decisis.[12] The justices *221 in the majority can say what they will about their commitment to stare decisis, but the fact that they reach the issue raised in Derror when the facts of this case do not require this Court to address it puts to rest any semblance of principle in their positions.[13]
In deciding whether to overturn a precedent of this Court, “[t]he first question, of course, should be whether the earlier decision was wrongly decided.”[14] The lead opinion has not shown that Derror was wrongly decided. In fact, it merely repeats similar arguments offered by the dissent in Derror. These arguments were unpersuasive when Derror was decided, and they remain unpersuasive today.
First, the lead opinion claims that the Derror Court “failed to interpret MCL 333.7212 in a manner consistent with federal law,”[15] as required under MCL 333.1111(1),[16] because “no federal court has held that 11-carboxy- *222 THC is a controlled substance.”[17] However, “no federal court has specifically excluded 11-carboxy-THC from the definition of ‘marijuana.’ ”[18] Accordingly, the Derror Court’s interpretation of MCL 333.7212 is consistent with federal law.[19]
Second, the lead opinion claims that Derror “ignored other relevant statutory provisions that suggest that 11-carboxy-THC should not be considered a schedule 1 controlled substance.” In particular, the lead opinion claims that the Michigan Board of Pharmacy is not required to include 11-carboxy-THC in schedule 1 because the substance does not have “high potential for abuse.”[20] This argument is specious. Although MCL 333.7211 mandates the inclusion of certain substances in schedule 1, “ [i]t does not prohibit the inclusion of other substances in schedule l.”[21] Moreover, the Legislature expressly listed marijuana as a schedule 1 controlled substance. Because 11-carboxy-THC is a derivative of marijuana, it too constitutes a schedule 1 controlled substance,[22] regardless of whether it “has high potential for abuse” within the meaning of MCL 333.7211.
*223 Finally, the lead opinion claims that, because the Legislature did not specifically include the terms “11-carboxy-THC” or “metabolite” in the list of schedule 1 controlled substances, it purposely omitted them from that list. This argument is also specious and misses the entire point of the Derror decision: the Legislature expressly listed marijuana in schedule 1 and then specifically defined “marijuana” as including its derivatives. The Legislature should not have to draft a statute in the manner of a person wearing a belt and suspenders, by expressly banning every conceivable iteration and by-product of marijuana in order to protect the citizens of Michigan from people who drive with marijuana and marijuana by-products in their systems.
Because Derror was correctly decided, the decision whether to overrule Derror should end there. However, even if Derror had been wrongly decided, other relevant factors exist that caution against overruling Derror.
Before overruling a wrongly decided precedent, this Court must consider “whether the decision at issue defies ‘practical workability,’ whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision.”[23] None of these factors compel overruling Derror.
Derror does not defy practical workability merely because of the “potential for arbitrary and discriminatory enforcement. . . .”[24] Moreover, the voters’ approval of the Michigan Medical Marihuana Act[25] is not, as the lead opinion suggests, relevant to deciding whether to overrule Derror.[26] To begin with, legalization of the use *224 of marijuana for a limited medical purpose cannot be equated with an intent to allow its lawful consumption in conjunction with driving. The lead opinion’s argument, taken to its logical extreme, suggests that marijuana itself, not just its derivative, 11-earboxy-THC, should no longer be a schedule 1 controlled substance because of its limited legalization by the Michigan Medical Marihuana Act. It is clear that the act operates in harmony with existing controlled substances laws, not in place o/them.[27] In particular, the act only provides that a “qualifying patient who has been issued and possess a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner ... for the medical use of marihuana in accordance with this act. . . .”[28] Notably, the act also prohibits the operation of a motor vehicle “while under the influence of marihuana.”[29]
Finally, the lead opinion expresses concern that Derror impermissibly prohibits
those qualified individuals who lawfully use marijuana in accordance with the Michigan Medical Marihuana Act... from driving for an undetermined length of time given the potential of 11-carboxy-THC to remain in a person’s system long after the person has consumed marijuana and is no longer impaired. ”[30]
This concern is a red herring. The act itself provides: “All other acts and parts of acts inconsistent with this act do not apply to the medical use of marihuana as provided for by this act.”[31] Therefore, to the extent the act’s prohibition of driving “under the influence” of *225 prescribed medical marijuana may be narrower than the statutes at issue in this case and the application of Derror, the people of Michigan have determined that the act supersedes Michigan’s controlled substances laws. Nevertheless, it does so only vis-a-vis prescribed medical marijuana, not in other circumstances, such as those in the case at bar.
The lead opinion’s denigration of the reliance interests involved in applying Derror is similarly misguided. Some justices in the majority attach significance to the doctrine of “legislative silence” or “acquiescence.”[32] But here, the lead opinion’s position appears to be inconsistent with this professed adherence to the doctrine that “ [i]f a legislature reenacts a statute without modifying a high court’s practical construction of that statute, that construction is implicitly adopted.”[33] It is noteworthy that the Legislature has reenacted MCL 257.625 four times by amending it since this Court decided Derror.[34] At none of those times did the Legislature amend the provision that forbids a person to operate a *226 motor vehicle with “any amount of a controlled substance listed in schedule 1 under. . . MCL 333.7212 . . . .”[35] Furthermore, the Legislature has not amended the list of schedule 1 controlled substances since Derror to exclude metabolites of marijuana or 11-carboxy-THC. Thus, for those in the majority who subscribe to the doctrine of legislative acquiescence, the Legislature’s multiple reenactments and acquiescence have significance and, accordingly, embarrassingly belie the majority’s argument that no reliance interests are involved in overturning Derror.
III. AS THERE WAS ACTUAL THC IN DEFENDANT’S BLOOD, THERE IS NO NEED TO REACH THE QUESTION WHETHER DERIVATIVES ARE WITHIN THE AMBIT OF THE STATUTE
Finally, and perhaps most important, the decision to overrule Derror is simply unnecessary in the instant case. Not only did defendant’s blood contain the derivative 11-carboxy-THC, it also contained THC itself. All members of this Court, including those in the majority, agree that having “any amount” of THC in a driver’s bloodstream, however slight, is illegal under this statute. Therefore, in a case in which it is undisputed that defendant violated this statute by virtue of the presence of actual THC, it is unnecessary to review whether 11-carboxy-THC is a schedule 1 controlled substance. Consequently, the decision by a majority of justices to overrule Derror should be seen for what it is: an unnecessary and exceedingly aggressive act to kill a case with which the new majority of this Court disagrees.
IV CONCLUSION
In enacting MCL 333.7212, the Legislature made the policy decision to include marijuana “and every ... deriva *227 tive” of marijuana[36] in the list of schedule 1 controlled substances. The Legislature, furthermore, forbade anyone to operate a vehicle with “any amount” of a schedule 1 controlled substance — such as a derivative of marijuana — in his or her body.[37] This Court’s decision in Derror correctly determined that the metabolite 11-carboxy-THC is a “derivative” of the marijuana. The determination by the majority of justices to overrule Derror is not only ill considered, but also usurps the clear policy choices of the people of Michigan. It is undisputed that there was actual THC in defendant’s bloodstream. Therefore, whether derivatives of THC are also prohibited is not a question that is necessary for this Court to reach in this case. This decision is thus indicative of the new majority’s willfulness to overrule cases with which it disagrees. Accordingly, I vigorously dissent from the decision to overrule Derror.
Corrigan and Markman, JJ., concurred with Young, J.

 People v Derror, 475 Mich 316; 715 NW2d 822 (2006).

 MCL 333.7106(3) (emphasis added).

 MCL 257.625(8) (emphasis added).

 MCL 333.7106(3) (emphasis added).

 See Shorter Oxford English Dictionary (6th ed), p 3221.

 Additionally, the Legislature has included “synthetic equivalents” of THC in schedule 1. See MCL 333.7212(l)(d) and (e).

 A “metabolite” is “ ‘[a]ny product or substrate (foodstuff, intermediate, waste product) of metabolism, especially of catabolism.’ ” Derror, 475 Mich at 326, quoting Stedman’s Online Medical Dictionary.

 Derror, 475 Mich at 326.

 Id., citing MCL 8.3a and People v Schaefer, 473 Mich 418, 435; 703 NW2d 774 (2005).

 Derror, 475 Michi at 327-329.

 Id. at 327.

 See, e.g., Pohutski v City of Allen Park, 465 Mich 675, 712; 641 NW2d 219 (2002) (Kelly, J., dissenting) (“[I]f each successive Court, believing its reading is correct and past readings wrong, rejects precedent, then the law will fluctuate from year to year, rendering our jurisprudence dangerously unstable.”); People v Hawkins, 468 Mich 488, 517-518; 668 NW2d 602 (2003) (Cavanagh, J., dissenting) (“ ‘We have overruled our precedents when the intervening development of the law has “removed or weakened the conceptual underpinnings from the prior decision, or where the later law has rendered the decision irreconcilable, with competing legal doctrines or policies.” ... Absent those changes, or compelling evidence bearing on Congress’ original intent,... our system demands that we adhere to our prior interpretations of statutes.’ ”), quoting Neal v United States, 516 US 284, 295; 116 S Ct 763; 133 L Ed 2d 709 (1996), quoting Patterson v McLean Credit Union, 491 US 164, 173; 109 S Ct 2363; 105 L Ed 2d 132 (1989); Rowland v Washtenaw Co Rd Comm, 477 Mich 197, 278; 731 NW2d 41 (2007) (Cavanagh, J., dissenting) (“ ‘Under the doctrine of stare decisis, principles of law deliberately examined and decided by a court of competent jurisdiction become precedent and should not be lightly departed.’ ”), quoting People v Jamieson, 436 Mich 61, 79; 461 NW2d 884 (1990); Devillers v Auto Club Ins Ass’n, 473 Mich 562, 622; 702 NW2d 539 (2005) (Weaver, J., dissenting) (“Correction for correction’s sake does not make sense. The case has not been made why the Court should not adhere to the *221 doctrine of stare decisis in this case.”); Berg, Hathaway attacks, Michigan Lawyers Weekly, October 27, 2008 (“ ‘People need to know what the law is,’ [Supreme Court candidate Diane] Hathaway said. T believe in stare decisis. Something must be drastically wrong for the court to overrule.’ ”); Lawyers ’ election guide: Judge Diane Marie Hathaway, Michigan Lawyers Weekly, October 30,2006 (quoting Justice Hathaway, then running for a position on the Court of Appeals, as saying that “[t]oo many appellate decisions are being decided by judicial activists who are overturning precedent”).

 This case is yet another example of how the new majority is making good on Chief Justice Kelly’s pledge made shortly after the shift in the Court’s philosophical majority following the 2008 Supreme Court election:
We the new majority will get the ship off the shoals and back on course, and we will undo a great deal of the damage that the Republican-dominated court has done. Not only will we not neglect our duties, we will not sleep on the bench. [She said, Detroit Free Press, December 10, 2008, p 2A.].

 Robinson v Detroit, 462 Mich 439, 464; 613 NW2d 307 (2000).

 Ante at 207.

 MCL 333.1111(1) provides that the Public Health Code “is intended to be consistent with applicable federal and state law and shall be construed, when necessary, to achieve that consistency.”

 Ante at 208.

 Derror, 475 Mich at 330 n 10.

 The lead opinion also claims that “federal courts have stated that ‘the purpose of banning marijuana was to ban the euphoric effects produced by THC.’ ” Ante at 208, quoting United States v Sanapaw, 366 F3d 492, 495 (CA 7, 2004), which in turn cited United States v Walton, 168 US App DC 305, 306; 514 F2d 201 (1975). However, as the Derror Court explained, and as the dissent in Derror acknowledged, “the federal courts that have dealt with similar issues have reached their conclusions by interpreting the legislative history, rather than the plain language of the analogous federal statute.” Derror, 475 Mich at 330 n 10. Our fidelity must be to the actual text of the statute, and accordingly, the Derror Court rightly declined to adopt federal precedents that “do not comport with the actual words that our Legislature used to convey its meaning.” Id.

 Ante at 209-210, quoting MCL 333.7211.

 Derror, 475 Mich at 330 n 9 (emphasis added).

 Id.

 Robinson, 462 Mich at 464.

 Ante at 213 (emphasis added).

 MCL 333.26421 et seq.

 Of note, defendant’s conduct occurred in 2005, three years before the people of Michigan approved the Michigan Medical Marihuana Act.

 After all, alcohol is a legal substance, and no one would suggest that the Legislature could not restrict from driving those who consume alcohol.

 MCL 333.26424(a).

 MCL 333.26427(b)(4).

 Ante at 215 n 16.

 MCL 333.26427(e) (emphasis added).

 “Silence by the Legislature following judicial construction of a statute suggests consent to that construction.” Donajkowski v Alpena Power Co, 460 Mich 243, 270; 596 NW2d 574 (1999) (Kelly, J., joined by Cavanagh, J., dissenting). I believe that this is a shallow, incoherent doctrine, as I stated in my Donajkowski majority opinion. See id. at 259-262. However, it is a doctrine upon which some justices in the majority rely when it is convenient to do so.

 Hawkins, 468 Mich at 519 (Cavanagh, J., joined by Kelly, J., dissenting), citing 2B Singer, Statutes & Statutory Construction (2000 rev), § 49.09, pp 103-112.
I continue to adhere to my stated position that “[i]n the absence of a clear indication that the Legislature intended to either adopt or repudiate this Court’s prior construction, there is no reason to subordinate our primary principle of construction — to ascertain the Legislature’s intent by first examining the statute’s language — to the reenactment rule.” Hawkins, 468 Mich at 508-509 (majority opinion).

 See 2006 PA 564; 2008 PA 341; 2008 PA 462; 2008 PA 463.

 MCL 257.625(8).

 MCL 333.7106(3) (emphasis added).

 MCL 257.625(8) (emphasis added).