# STATE OF MICHIGAN

# COURT OF APPEALS

NORMAN LEVANDER,

      Plaintiff-Appellant,

v

HOME OWNERS INSURANCE COMPANY,

      Defendant-Appellee,

and

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

      Defendant.

UNPUBLISHED
June 18, 2015

No. 320101
Genesee Circuit Court
LC No. 11-096786-NF

Before: MURPHY, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

In this first-party action brought pursuant to the Michigan no-fault act, MCL 500.3101 *et seq.*, plaintiff Norman Levander sought personal protection insurance (PIP) benefits from his motor vehicle insurer, defendant Home Owners Insurance Company (Home Owners), to cover losses associated with injuries that he suffered when the motorcycle he was operating crashed upon exiting a highway. Home Owners had denied plaintiff's claim for PIP benefits, asserting that the motorcycle accident and resultant injuries did not involve or arise out of the operation or use of a motor vehicle. Plaintiff contended that the accident was caused by a vehicle whose driver had belatedly maneuvered to exit the highway right behind plaintiff's motorcycle, tailgating him at an excessive speed, which required plaintiff to take immediate evasive action to avoid being struck, resulting in the accident.[1] On Home Owners' motion for summary disposition under MCR 2.116(C)(10), the trial court ruled that a genuine issue of material fact existed with respect to whether the accident involved or was caused by the alleged tailgating motor vehicle. Nevertheless, the trial court granted summary disposition in favor of Home

---

[1] Plaintiff also claimed that perhaps two motor vehicles were involved in the accident, one that swung over from a distant lane and one that was directly behind his motorcycle.

-1-

Owners on the basis that the insurer of this motor vehicle, defendant Progressive Michigan Insurance Company (Progressive), was the higher priority insurer under MCL 500.3114(5). Progressive, which is not a party to this appeal, had been granted summary disposition because plaintiff failed to give notice to or file suit against Progressive within the one-year statute of limitations in MCL 500.3145. On appeal, plaintiff, while agreeing with the trial court that a genuine issue of material fact exists in regard to whether the alleged tailgating motor vehicle was involved in or caused the accident, argues that a similar factual issue exists in connection to the possible involvement of a second motor vehicle. As an alternative basis for us to affirm the trial court's order granting summary disposition, Home Owners argues that there is no genuine issue of material fact that no motor vehicles were involved in or caused the accident. Next, plaintiff maintains on appeal that Home Owners can be held liable for the payment of PIP benefits, despite the statutory priority provisions, because the tailgating motor vehicle and the other potentially-involved vehicle were not identifiable, and because estoppel and waiver principles bar Home Owners from arguing priority. We reverse and remand for further proceedings.

## I. BACKGROUND

On September 24, 2010, plaintiff was operating his motorcycle, traveling southbound on I-75 in the area of Corunna Road in Flint Township. According to plaintiff's deposition testimony, as he entered the exit ramp for the Corunna Road exit, he "saw something flash [o]n [his] left side and [he] looked real quick and there was a car coming that was in the third lane over . . . coming across[] to the exit." He then turned and looked in his mirrors and saw that the vehicle had "popped right in behind [him]," at which point all he could see was the vehicle's hood. Plaintiff was "startled" by the vehicle moving so fast and "so close" behind him. Plaintiff then decided that, because the vehicle was closing in on him at a high rate of speed, he should drive his motorcycle onto the grass between I-75 and the exit ramp, rather than try to continue on the exit ramp, as he did not want to get hit from behind and "end up getting knocked off and rolling under" the car. Once plaintiff left the pavement, his rear tire hit the curb and "bounced up in the air," his bike started "wobbling," he "went down to the ground," and he was "knocked out." According to plaintiff, if he had stayed on the roadway, the vehicle would have collided with the rear end of his motorcycle, so he veered off the road in an effort to avoid a collision. Plaintiff did not recall being pushed from behind or knocked off to the side by the vehicle.

As eventually determined, Camille Sumpter, the only witness to the accident listed in the police accident report, was the owner and operator of the motor vehicle that was driving directly behind plaintiff when the accident occurred. Sumpter's no-fault motor vehicle insurer was Progressive. According to Sumpter's deposition testimony, on the day of the accident, the traffic was congested and she was approximately a car length or less behind plaintiff's motorcycle as her vehicle and the motorcycle entered the exit ramp off of I-75. Sumpter testified that her car and plaintiff's motorcycle were both slowing down as they entered the exit, traveling between 45 and 60 miles per hour. Sumpter, however, believed that plaintiff's motorcycle was traveling substantially faster than her vehicle as they exited, and there was not much space for the motorcycle to stop before colliding with the rear of the stopped vehicles waiting for the stoplight at the top of the exit ramp. According to Sumpter, plaintiff's motorcycle hit a curb and plaintiff flew off, going probably 20 or 30 feet. Sumpter, who stopped to assist plaintiff, indicated that, after he regained consciousness, plaintiff stated, "I took my eyes off the road." Sumpter did not observe anything that might have caused plaintiff to take evasive action, never sensed that she

-2-

was going to collide with plaintiff's motorcycle at any time, and never had to slam on her brakes or skid or do anything of the kind. According to Sumpter, she would not have rear-ended the motorcycle had plaintiff applied his brakes.

The police accident report indicated that plaintiff entered the off-ramp going too fast, lost control, hit the curb, and then crashed. The reporting police officer's deposition testimony reflected that this conclusion was based on Sumpter's statement to the officer. The police officer testified that plaintiff did not say anything about being tailgated, but the officer believed that he did recall plaintiff blaming the crash on somebody cutting him off "or something like that." While the police accident report identified Sumpter as a witness, the report gave no indication whatsoever that Sumpter had been traveling directly behind plaintiff's motorcycle. Plaintiff was transported to Genesys Regional Medical Center for treatment, and an associated medical report indicated:

> [Plaintiff] states he was riding and looked behind him and he felt there was a car coming closely behind him. He states while looking behind him he did not realize that a turn was coming up quickly, he missed the turn, went into the median. He states he flipped over a few times.

Plaintiff was seriously injured in the accident and, within two months of the accident, made a claim for PIP benefits from Home Owners, his no-fault motor vehicle insurer, asserting that he was forced off of the exit ramp by an unidentified motor vehicle. Given her identification as a witness on the accident report, Home Owners conducted an interview of Sumpter about the accident. She told an adjustor that she was driving "right behind" plaintiff, "probably a couple feet," that her vehicle never made contact with plaintiff's motorcycle, and that it looked like plaintiff either missed the exit and ran into the curb or came up on the exit too fast and was unable to make the turn. A little over three months after the accident, Home Owners notified plaintiff through his counsel that the claim was denied because Home Owners' investigation revealed that the accident did not involve a motor vehicle, as necessary to be eligible for PIP benefits in regard to injuries incurred while operating a motorcycle. The notice made no mention of Sumpter's statements to the adjuster, nor was there any indication that PIP benefits were being denied on the basis that another insurer had priority in providing benefits to plaintiff. In an affidavit supplied by an attorney for the law firm representing plaintiff, the attorney averred, in relevant part:

> 5. Based on Defendant Home-Owners denial based on lack of vehicular involvement, I contacted the witness listed on the . . . accident report, Ms. Camille Sumpter. The . . . [report] lists her as merely a witness and does not document her involvement in the accident. When I spoke with her, she denied following Plaintiff's motorcycle closely.

> 6. Because the . . . [accident report] does not document the location of the Sumpter vehicle at the time of the crash, because Ms. Sumpter denied following the vehicle closely when I contacted her, and because Defendant Home-Owners represented that the Sumpter vehicle was not involved, I continued to believe that an unidentified vehicle ran Mr. Levander off the road.

7. At no time did Defendant Home-Owners disclose to me that it had interviewed Ms. Sumpter and that she admitted to being within a couple of feet of Plaintiff's motorcycle at the time of the collision.

On September 21, 2011, almost one year after the accident, plaintiff filed the instant action against Home Owners, seeking recovery of PIP benefits under the no-fault act. On July 3, 2012, over 21 months after the accident and after the one-year limitations period had expired, MCL 500.3145(1),[2] plaintiff amended his complaint to add a claim for PIP benefits against Sumpter's insurer Progressive. Plaintiff amended the complaint on the basis of Sumpter's deposition testimony elicited during the litigation, which revealed to plaintiff, allegedly for the first time, that Sumpter's car was the vehicle directly behind plaintiff and was traveling within a car length or less of plaintiff's motorcycle when the accident occurred. In plaintiff's mind, this testimony indicated that Sumpter's motor vehicle had indeed been involved in the accident. On Progressive's motion for summary disposition, the trial court dismissed Progressive, concluding that plaintiff's suit against Progressive was time-barred. More specifically, the court dismissed the claim against Progressive because plaintiff admittedly failed to provide notice of his claim to or file suit against Progressive for PIP benefits within one year of the accident as required under MCL 500.3145(1). See *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 573-574; 702 NW2d 539 (2005).

Home Owners also moved for summary disposition under MCR 2.116(C)(10), arguing that pursuant to MCL 500.3105(1), it was not responsible for paying PIP benefits because a motor vehicle was not sufficiently involved in the accident, as necessary to trigger entitlement to benefits under the no-fault act. MCL 500.3105(1) provides:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of *a motor vehicle* as a motor vehicle, subject to the provisions of this chapter. [Emphasis added.]

A motorcycle does not constitute a "motor vehicle" for purposes of MCL 500.3105(1) and the no-fault act; however, the Legislature has not entirely excluded injured motorcyclists from obtaining PIP benefits. *Detroit Med Ctr v Progressive Mich Ins Co*, 302 Mich App 392, 394-395; 838 NW2d 910 (2013).[3] Rather, an injured motorcyclist is entitled to no-fault benefits

---

[2] MCL 500.3145(1) provides, in pertinent part:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. . . . .

[3] We note that a "motorcycle insurer is never required to pay PIP benefits through the motorcycle policy." *Perkins v Auto-Owners Ins Co*, 301 Mich App 658, 665-666; 837 NW2d 32 (2013).

when his or her motorcycle is involved in an accident that arose out of the ownership, operation, maintenance, or use of a motor vehicle. *Id.* at 395. In other words, a party injured while operating or riding a motorcycle must tie the accident to the involvement of a motor vehicle. Home Owners took the position that there was no genuine issue of material fact that there was a complete absence of a causal connection between plaintiff's injuries and the operation or use of a motor vehicle; therefore, it had no obligation to provide PIP benefits to plaintiff. Alternatively, Home Owners argued that it was undisputed that Sumpter's vehicle was the only vehicle directly behind plaintiff at the time of the accident, and thus, if a motor vehicle was indeed involved in the accident, it could only have been Sumpter's car. Therefore, according to Home Owners, if plaintiff was entitled to PIP benefits at all, Progressive, Sumpter's insurer, was the higher priority insurer under MCL 500.3114(5). MCL 500.3114 provides in relevant part as follows:

> (1) Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident.
>
> . . .
>
> (5) A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident. [ostensibly Progressive]
>
> (b) The insurer of the operator of the motor vehicle involved in the accident. [ostensibly Progressive]
>
> (c) The motor vehicle insurer of the operator of the motorcycle involved in the accident. [Home Owners]
>
> (d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident. [Home Owners]

In general, under subsection (1) above, "an injured person is required to seek compensation from his own no-fault insurer, regardless of whether that person's insured vehicle is involved in the accident." *Farmers Ins Exch v AAA of Mich*, 256 Mich App 691, 695; 671 NW2d 89 (2003). However, the Legislature has provided exceptions to this general rule, such as the one in subsection (5) of MCL 500.3114. *Farmers Ins Exch v Farm Bureau Ins Co of Mich*, 272 Mich App 106, 111; 724 NW2d 485 (2006). "MCL 500.3114(5). . . establishes the priority in which a motorcycle rider accidentally injured by a motor vehicle must claim no-fault benefits." *Id.* Home Owners' position was that, assuming the sufficient involvement of Sumpter's motor vehicle, thereby triggering MCL 500.3114(5), Progressive, *and not Home Owners*, would be liable for plaintiff's PIP benefits. Home Owners argued that regardless of whether a motor vehicle was involved in or caused the accident, it was entitled to summary

disposition – if there was no motor vehicle involvement, MCL 500.3105(1) precluded its liability to pay PIP benefits, and if a motor vehicle was involved in the accident, MCL 500.3114(5) precluded its liability.

In response, plaintiff argued that the evidence created a genuine issue of material fact regarding whether a motor vehicle was sufficiently involved in the motorcycle accident so as to trigger entitlement to PIP benefits under the no-fault act. With respect to Home Owners' alternative argument, plaintiff's position was that Home Owners could be held liable for the payment of PIP benefits, despite the statutory priority language in MCL 500.3114(5), given that Sumpter's motor vehicle and any other potentially-involved vehicle were not identifiable. Plaintiff insisted that it was proper to seek PIP benefits from Home Owners under the circumstances. Plaintiff also argued that Home Owners was equitably estopped from relying on the priority provisions, considering that Home Owners had information, which was never shared, that Sumpter had closely trailed plaintiff's motorcycle, yet it denied coverage solely on the basis of lack of involvement by a motor vehicle, not priority. For similar reasons, plaintiff also contended that Home Owners had waived a priority argument on the basis of the "mend the hold" doctrine.[4]

The trial court concluded that evidence sufficient to create an issue of fact existed with respect to whether the accident involved or arose out of the operation or use of Sumpter's motor vehicle. However, the trial court further ruled:

> Pursuant to MCL 500.3114(5)(a), a timely filed claim against the Sumpter vehicle would have survived a motion for summary disposition. Plaintiff's failure to timely file the claim against the carrier for the Sumpter vehicle does not allow plaintiff to seek damages against the next insurer in priority[, i.e., Home Owners,] under MCL 500.3114(5). Therefore, summary disposition is GRANTED in favor of Home Owners . . . with respect to plaintiff's claim for first party benefits.

---

[4] See *C E Tackels, Inc v Fantin*, 341 Mich 119, 124; 67 NW2d 71 (1954). A version of the doctrine was set forth in *Smith v Grange Mut Fire Ins Co of Mich*, 234 Mich 119, 122-123; 208 NW 145 (1926), wherein our Supreme Court observed:

> This court has many times held, and it must be accepted as the settled law of this state, that, when a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise the insured of all the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice.

We note that in *Kirschner v Process Design Assoc, Inc*, 459 Mich 587, 593-595; 592 NW2d 707 (1999), the Supreme Court discussed various limitations on the principle espoused in *Smith.*

It does not appear that the trial court gave any consideration to plaintiff's arguments regarding equitable estoppel, the "mend the hold" doctrine, or the claim that the Sumpter vehicle was not identifiable prior to the expiration of the one-year statute of limitations, MCL 500.3145.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013). We additionally review de novo questions of law, including the proper interpretation of a statute. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

### B. SUMMARY DISPOSITION PRINCIPLES – MCR 2.116(C)(10)

With respect to the principles governing a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), observed:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

### C. RULES OF STATUTORY CONSTRUCTION

In *Whitman v City of Burton*, 493 Mich 303, 311-312; 831 NW2d 223 (2013), the Michigan Supreme Court recited the rules governing statutory construction:

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the

language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [Citations omitted.]

## D. DISCUSSION

For the reasons set forth below, we hold that there existed a genuine issue of material fact with respect to whether the motorcycle accident and resultant injuries involved or arose out of the operation or use of Sumpter's motor vehicle; this conclusion does not encompass the purported "second" motor vehicle, of which there was insufficient evidence relative to causation. We initially tackle the question regarding the relevancy of whether a genuine issue of material fact existed, given the priority rules in MCL 500.3114(5). Were we to hold as a matter of law that the accident and injuries *did not* arise out of the operation or use of any motor vehicle, as urged by Home Owners, the analysis would be complete, as plaintiff would not be entitled to PIP benefits from Home Owners under MCL 500.3105(1). Summary dismissal in favor of Home Owners would be proper in that setting. Similarly, if the trier of fact following trial were to make that same finding, Home Owners would be entitled to a judgment in its favor. On the other hand, whether determined as a matter of law by way of a motion for summary disposition or determined following a trial, if the accident and injuries involved or arose out of the operation or use of Sumpter's motor vehicle, MCL 500.3105(1), standing alone, would implicate Home Owners' liability for providing PIP benefits to plaintiff. But that liability would ordinarily be subject to 0the priority provisions in MCL 500.3114(5), which would place Progressive ahead of Home Owners, making Progressive fully responsible for all PIP payments. However, as indicated above, Progressive can no longer be held legally obligated to pay PIP benefits to plaintiff because plaintiff failed to commence an action against Progressive and failed to give a written notice of injury to Progressive within one year after the date of the accident, MCL 500.3145(1).

MCL 500.3114(5) dictates that the injured person "shall claim" PIP benefits from an insurer "in the . . . order of priority." From the beginning, plaintiff operated on the basis that a motor vehicle caused the accident; therefore, plaintiff, under ordinary circumstances, should have filed a timely claim against the insurer of the owner, registrant, or operator of any involved motor vehicle in order to comply with MCL 500.3114(5). Plaintiff maintains that he was unable to identify Sumpter's motor vehicle in relationship to pursuing a claim against her insurer, Progressive, within the one-year limitations period in MCL 500.3145(1).

In *Frierson v West American Ins Co*, 261 Mich App 732; 683 NW2d 695 (2004), the plaintiff was a passenger on a motorcycle when a motor vehicle, coming from the opposite direction, made a left turn right in front of the motorcycle's path. "In order to avoid a collision with the motor vehicle, the [motorcycle] operator swerved or slammed on his brakes, causing himself and plaintiff to hit the ground." *Id.* at 733. The police failed to locate the motor vehicle, and there was no available information concerning the motor vehicle, its driver, or the insurer, if any. The operator of the motorcycle did not have separate PIP coverage. The plaintiff's no-fault motor vehicle insurer was West American Insurance Company (West American). The Michigan Assigned Claims Facility (MACF) assigned the plaintiff's claim to Farm Bureau Mutual Insurance Company (Farm Bureau). We note that, because the injured plaintiff was a motorcycle *passenger*, the plaintiff's insurer, West American, did not qualify as any one of the four possible entities listed in MCL 500.3114(5)(a)-(d) (insurer of motor vehicle's owner or registrant; insurer

of motor vehicle's operator; motor vehicle insurer of motorcycle's operator; motor vehicle insurer of motorcycle's owner or registrant).

West American and Farm Bureau engaged in a priority dispute, and the trial court concluded that West American was first in priority. *Frierson*, 261 Mich App at 733. This Court, in affirming, first ruled that the documentary evidence conclusively established that the unidentified motor vehicle had been involved in the motorcycle accident. *Id.* at 736-737. We note that had the no-fault insurer of the unidentified motor vehicle actually been identifiable, that insurer would clearly have had priority in providing PIP benefits to the plaintiff. The panel next acknowledged "that the insurers listed in subsections a to d of MCL 500.3114(5) either [did] not exist or [could not] be identified in this case[,]" leaving the Court to determine whether the plaintiff's own insurer, West American, or the MACF-assigned insurer, Farm Bureau, was liable for the plaintiff's PIP benefits. *Id.* at 737. This Court ruled:

> Here, we have an unidentified insurer who, if identified, would be liable under one of the exceptions in MCL 500.3114(1), namely MCL 500.3114(5). But, because that insurer is unidentified, the priority dispute remains between plaintiff's insurer and the MACF insurer.
>
> On the basis of our Supreme Court's determination in *Parks* [*v Detroit Automobile Inter-Ins Exch*, 426 Mich 191, 204; 393 NW2d 833 (1986)] . . ., of the legislative purpose underlying the no-fault act,[5] we conclude that when an insurer that would be liable under one of the exceptions in MCL 500.3114(1) cannot be identified, the general rule applies and the injured party must look to her own insurer for personal protection insurance benefits.

We hold that the analytical framework from *Frierson* is equally applicable here, such that, if plaintiff could not identify Sumpter's vehicle under the circumstances presented, and thus could not identify Progressive as the purported higher priority insurer under MCL 500.3114(5) before expiration of the one-year statute of limitations, MCL 500.3145(1), Home Owners can be held liable to pay PIP benefits.[6] In its ruling, the trial court simply concluded that "[p]laintiff's

---

[5] The *Frierson* panel, quoting *Parks*, 426 Mich at 204, stated:

> "[T]he Legislature, in its broader purpose, intended to provide benefits whenever, as a general proposition, an insured is injured in a motor vehicle accident, whether or not a registered or covered motor vehicle is involved; and *in its narrower purpose intended that an injured person's personal insurer stand primarily liable* for such benefits *whether or not its policy covers the motor vehicle involved and even if the involved vehicle is covered by a policy issued by another no-fault insurer.*" [*Frierson*, 261 Mich App at 737-738 (emphasis and alteration in original).]

[6] Of course, this is predicated on the assumption that the accident and injuries involved or arose out of the operation or use of Sumpter's motor vehicle.

failure to timely file the claim against . . . [Progressive] does not allow plaintiff to seek damages against the next insurer in priority [Home Owners] under MCL 500.3114(5)." The trial court did not appear to entertain or consider, under the facts and circumstances surrounding this case, whether Progressive was identifiable as a higher priority insurer under MCL 500.3114(5) before expiration of the one-year limitations period. Accordingly, we remand the case to the trial court for consideration of this issue and application of the *Frierson* decision. If the trial court finds in favor of Home Owners on the issue, we next direct the trial court to consider the equitable estoppel and waiver ("mend the hold" doctrine) arguments, which the court also apparently failed to consider and rule upon.[7]

If the trial court determines that Sumpter/Progressive was identifiable before the limitations period elapsed, and it rejects the equitable estoppel and waiver arguments, Home Owners will be entitled to summary dismissal, subject, of course, to any appeal of the court's decisions. If the trial court determines that Sumpter/Progressive was not identifiable before the limitations period expired, or that plaintiff's equitable estoppel or waiver argument is sound and applicable, the case is to proceed to trial on the question whether the accident involved or arose out of the use or operation of Sumpter's motor vehicle, as there is a genuine issue of material fact on the matter for the reasons that we now discuss.

In *Detroit Med Ctr*, this Court discussed the level of a motor vehicle's involvement sufficient to satisfy MCL 500.3105(1):

> There is no "iron-clad rule" as to what level of involvement is sufficient under MCL 500.3105. However, while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle. The causal connection between the injuries and the motor vehicle cannot be extended to something distinctly remote. Moreover, the injuries must be more than tangentially related to the use of an automobile to trigger the entitlement to no-fault benefits. Actual physical contact between a motorcycle and a motor vehicle is not required to establish the requisite involvement of a motor vehicle in an accident as long as the causal nexus between the accident and the car is established. For a motor vehicle to be involved in an accident, it must actively, as opposed to passively, contribute to the accident, and have more than a random association with the accident scene. [T]here must be some activity, with respect to the vehicle, which somehow contributes to the happening of the accident. [*Detroit Med Ctr*, 302 Mich App at 395-396 (citations and quotation marks omitted; alteration in original).]

---

[7] Because the trial court did not address these issues, it would be improper for us to rule on the matters in the first instance.

In *Frierson*, as indicated above, this Court determined that the motor vehicle was involved in the motorcycle accident, where "[t]he deposition testimony established that the motor vehicle . . . turn[ed] left into the lane occupied by the motorcycle, causing the motorcycle operator to brake to avoid hitting the motor vehicle." *Frierson*, 261 Mich App at 736-737.

Taking into consideration the evidence placing Sumpter's car directly behind plaintiff's motorcycle immediately preceding the accident, the deposition testimony by plaintiff revealing a direct causal connection, the statement by Sumpter to Home Owners' adjuster and Sumpter's deposition testimony about how closely she trailed plaintiff's motorcycle, the police officer's testimony concerning plaintiff's remark about being cut off, and plaintiff's statement to treating medical personnel about the precipitating events, there was an abundance of documentary evidence establishing a genuine issue of material fact on the question regarding whether Sumpter's motor vehicle was involved in or caused the accident. While there was also evidence suggesting no involvement of Sumpter's motor vehicle in the accident, we must view the evidence in a light most favorable to plaintiff. *Pioneer State Mut*, 301 Mich App at 377. And in so doing, the evidence favorable to plaintiff: showed a causal connection between plaintiff's injuries and the use of a motor vehicle, which causal connection was more than incidental, fortuitous, or but for; showed injuries that were foreseeably identifiable with the normal use of Sumpter's vehicle; showed a causal connection that was not distinctly remote; showed injuries that were more than tangentially related to the use of Sumpter's vehicle; and, showed that Sumpter's vehicle actively, as opposed to passively, contributed to the accident that went beyond a random association with the accident scene. Indeed, plaintiff's deposition testimony alone makes this a triable issue for a fact-finder. If, following a determination that the Sumpter vehicle was not identifiable within the one-year limitations period or, if identifiable, that equitable estoppel or waiver principles applied, and the trier of fact finds that Sumpter's motor vehicle was involved in and caused the accident and injuries, plaintiff will be entitled to PIP benefits from Home Owners on the establishment of related losses.

With respect to plaintiff's argument that the trial court improperly limited its ruling to the possible involvement of Sumpter's vehicle, where, according to plaintiff, the evidence suggested that a "second" motor vehicle also contributed to the accident, we find no basis to disturb the trial court's ruling. All of the documentary evidence placed Sumpter's motor vehicle directly behind plaintiff's motorcycle, and plaintiff's own testimony definitively and fully laid the blame for the accident on the car that was directly behind him, which caused him to take evasive action and crash. While Sumpter testified that she did not observe any motor vehicle making an abrupt lane change in an effort to use the exit ramp, as alluded to by plaintiff in his deposition, and although Sumpter testified that she had been traveling right behind plaintiff for "maybe a minute," this testimony did not create a genuine issue of material fact regarding a *causal connection* between the accident and a purported second car. Plaintiff himself twice indicated in his deposition testimony that the car that had abruptly changed lanes was the very same car that ended up directly behind him and which caused the accident. Sumpter's testimony perhaps creates a factual dispute concerning *the existence* of a second car, but, in light of plaintiff's

-11-

testimony and the other evidence, there is not a triable issue on the assertion that a "second" car was involved in or caused, even in part, the accident for which plaintiff seeks PIP benefits.[8]

### III.   CONCLUSION

We remand for the trial court to entertain the issue concerning whether Sumpter's motor vehicle was identifiable within the one-year statute of limitations, MCL 500.3145, and, if the court determines that it was identifiable, to address whether equitable estoppel or waiver principles nevertheless preclude Home Owners from arguing the issue of priority.  If plaintiff's case survives these obstacles, the case is to proceed to trial on the question whether the motorcycle accident and resultant injuries involved or arose out of the operation or use of Sumpter's motor vehicle.

Reversed and remanded for further proceedings.  We do not retain jurisdiction.  Having prevailed on appeal, plaintiff is awarded taxable costs pursuant to MCR 7.219.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola

---

[8] The responding police officer's vague recollection that plaintiff stated that somebody had cut him off "or something like that" is wholly inadequate to link a second car for purposes of causation.  Moreover, we reject the opinion of plaintiff's expert, who averred that a "second" car was "actively involved as a cause" of the accident, as it is effectively a legal conclusion and one that is not supported by the record; it does not create a genuine issue of material fact on causation and the involvement of the purported second car.  See *Maiden v Rozwood*, 461 Mich 109, 130 n 11; 597 NW2d 817 (1999) (expert "witness did not create a question of fact by merely opining that defendant's performance violated the statutory standard;" "[w]hether the statutory standard of care was violated is a legal conclusion[, and] [t]he opinion of an expert does not extend to legal conclusions").