# STATE OF MICHIGAN

# COURT OF APPEALS

MARIA PERKINS,

        Plaintiff-Appellant,

v

CITY OF DETROIT,

        Defendant-Appellee.

UNPUBLISHED
March 28, 2017

No.  330369
Wayne Circuit Court
LC No.  14-016224-NF

Before:  M. J. KELLY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff, Maria Perkins, appeals as of right the trial court's order granting summary disposition in favor of defendant, City of Detroit (the city), in this action by plaintiff seeking no-fault personal protection insurance benefits, commonly referred to as PIP benefits, arising out of injuries allegedly incurred as a passenger on a city bus when the bus was involved in an accident. The trial court ruled that under the one-year statute of limitations in MCL 500.3145(1), plaintiff failed to commence an action for PIP benefits against the city, which was self-insured for purposes of city vehicles, within one year of the accident. The trial court further ruled that MCL 500.3145(1)'s notice-of-injury exception to the standard one-year limitations period, which exception creates a different one-year limitations period tied to the most recent loss and implicates the one-year-back rule in the statute, was not triggered. The court reached this conclusion on the basis of its finding that the city did not receive a written notice of injury within one year of the accident in a form and manner envisioned by MCL 500.3145(1). Plaintiff's position was that a city crash investigation on the day of the accident generated a written report that included all of the information necessary to satisfy the notice-of-injury provision in MCL 500.3145(1), i.e., plaintiff's name and address and the time, place, and nature of her injuries. Plaintiff further contended that she had filed an application for PIP benefits with the Michigan Assigned Claims Facility (MACF), MCL 500.3171 *et seq.*, and not the city, within one year of the accident, given the city's bankruptcy filing and the associated automatic stay that barred any action against the city. Plaintiff argued that under federal law the bankruptcy and automatic stay tolled the one-year statute of limitations in MCL 500.3145(1) and rendered plaintiff's complaint timely. Additionally, plaintiff maintained that, after the MACF denied her claim for PIP benefits

-1-

and instructed her to file a claim with the city,[1] plaintiff's attorney sought advice from city counsel and was instructed to submit an application for PIP benefits to the city. Plaintiff's counsel then submitted to the city the application that had been sent to the MACF, and the city rejected it. On appeal, plaintiff essentially raises the same issues as posited below, claiming that the city's written report sufficed to satisfy the notice-of-injury provision in MCL 500.3145(1) and that the automatic stay arising from the city's bankruptcy filing tolled the one-year limitations period. We affirm.

A report generated by the Detroit Fire Department – EMS Division (hereafter EMS report) indicated that on June 11, 2013, there had been a motor vehicle accident, that a bus traveling less than ten miles an hour had been side-swiped by a vehicle traveling about five miles an hour, that plaintiff had been a passenger on the bus, that plaintiff was found by emergency personnel on a nearby street corner, that plaintiff, who was ambulatory, complained of neck and back pain, and that plaintiff was transported to Detroit Receiving Hospital for care. Plaintiff claims in her brief that, as the accident transpired, she was "thrown forward with full force striking her body and aggravating a prior back injury that was still healing."[2] The EMS report noted the following information: plaintiff's various vital signs and physical status; the specific care dispensed by EMS personnel; plaintiff's age, gender, race, address, phone number, social security number, and driver's license number; and information concerning the location of the accident.

A report was also prepared by a city inspector with respect to an investigation of the accident (hereafter investigation report).[3] The investigation report, which was finalized a couple of hours after the accident, contained a description of the accident along with myriad information concerning the bus, the driver, the conditions, the time and place of the accident, and the witnesses. The investigation report additionally had a section identifying the persons claiming injury as a result of the accident, including plaintiff, listing her address, phone number, and the

---

[1] We note that the claim for PIP benefits was submitted to the MACF with about one week remaining on the one-year period following the accident and that the denial notice was sent to plaintiff after the one-year period had elapsed.

[2] The EMS report reflected that a spine board and stretcher were employed in moving plaintiff at the scene and hospital.

[3] The full title of the document, in various size characters, was as follows:

CITY OF DETROIT
DEPARTMENT OF TRANSPORTATION
TRANSPORTATION OPERATIONS DIVISION
SERVICE INSPECTOR ACCIDENT REPORT

nature of her alleged injury, i.e., a "neck" injury.[4]  We can safely conclude that plaintiff had communicated this information to the inspector or an agent for purposes of preparation of the investigation report.

On December 22, 2014, plaintiff filed the instant action against the city, alleging negligence resulting in serious impairment of a body function and permanent serious disfigurement, a claim for PIP benefits, and a request for declaratory relief with respect to various issues, including the applicability of MCL 500.3145(1), given that the city had "filed bankruptcy and [plaintiff's] claim ha[d] been subject to the automatic stay under the Federal Bankruptcy Code."

On June 12, 2015, the city filed a motion for summary disposition pursuant to MCR 2.116(C)(7) and (8), indicating that plaintiff had filed a complaint for PIP benefits on December 22, 2014, for an accident that occurred on June 11, 2013, that plaintiff had submitted an application for PIP benefits, dated June 2, 2014, to the MACF, that by correspondence dated July 16, 2014, plaintiff was informed by the MACF that she was ineligible to receive benefits through the MACF and that she needed to file her claim with the city, and that on October 6, 2014, approximately 15 months after the accident, plaintiff's attorney submitted an email to the city, with the MACF application attached, requesting PIP benefits.[5]  Therefore, according to the city, plaintiff failed to comply with MCL 500.3145(1) by not filing the lawsuit against, nor serving a notice-of-injury upon, the city within one year of the accident, thereby entitling the city to summary dismissal of the PIP claim.

On July 6, 2015, the city filed a supplement to its motion for summary disposition, contending that the city had filed a Chapter 9 petition for bankruptcy protection on July 18, 2013, that on November 21, 2013, the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, issued an order establishing a deadline of February 21, 2014, for filing a proof of claim to preserve any and all claims against the city, that on February 24 and June 16, 2015, the city notified plaintiff "that her No-Fault Tort claim was barred for failure to file a bankruptcy proof of claim by February 21, 2014[,]" and that plaintiff's suit should therefore be dismissed in its entirety because the court lacked jurisdiction and there were no genuine issues of material fact.  The city supported its supplemental brief with documentary evidence.

---

[4] Plaintiff states that the police department responded to the accident, but no police report was ever made available to plaintiff.  The city notes that a State of Michigan UD-10 Traffic Crash Report, "even if there was one," would not suffice in providing notice of injury under MCL 500.3145(1).  The parties attached sample blank UD-10 reports; however, the record does not contain a filled-out UD-10 or police report pertaining to the accident.

[5] All of these assertions were supported by documentary evidence submitted by the city and are not really in dispute.  In the email by plaintiff's counsel to the city, he stated that he had filed an application with the MACF instead of the city because he "presumed there would not be PIP coverage immediately available due to the Automatic Stay barring claims against the City."

On July 20, 2015, plaintiff filed her response to the city's motion for summary disposition. Plaintiff maintained that the reason an application for PIP benefits was filed with the MACF was because the city "had filed for bankruptcy and it was clear that medical treatment that Plaintiff required would not be timely paid by [the city] and so Plaintiff was effectively a *de facto* uninsured accident victim." Plaintiff noted that the bankruptcy filing had resulted in an automatic stay, barring efforts against the city to pursue a claim. Further, plaintiff argued that the written notice-of-injury provision in MCL 500.3145(1) had effectively been satisfied via preparation of the investigation report by an agent of the city. Plaintiff did not proffer any arguments in connection to the city's supplemental brief that spoke of plaintiff's alleged failure to file a proof of claim with the bankruptcy court.

On July 21, 2015, a stipulated order was entered dismissing plaintiff's negligence claim against the city. On August 10, 2015, the city filed a reply to plaintiff's response to the city's motion for summary disposition. The city argued that plaintiff's no-fault claim was barred under MCL 500.3145(1) and that the reports could not serve as the written notice of injury with respect to MCL 500.3145(1), as that was not their intended purpose. The city also contended that after it filed for bankruptcy in July 2013, the city took the position that no-fault PIP claims should be treated as all other unsecured claims under the Bankruptcy Code, but the state disagreed with that stance as a matter of public policy. The city asserted that its self-insurance on city vehicles had expired on June 9, 2014. According to the city, after extensive negotiations between the city and the state, a memorandum of understanding (MOU) was reached between the state and the city on August 8, 2014. A key provision of the MOU, which was incorporated into a plan of adjustment for purposes of bankruptcy proceedings, provided that the city would process no-fault PIP claims. The MOU stated in pertinent part:

> All No-Fault Claims against the City, whether arising pre- or post-bankruptcy petition, must be handled and paid by the City in full (if determined valid) in the ordinary course of business. The City will amend its Plan for the Adjustment of Debts to reflect its intention to pay 100% of the determined value of all No-Fault Claims, as follows:
>
> From and after the Effective Date, the City will continue to administer (either directly or through a third party administrator) and pay valid prepetition Claims for liabilities with respect to which the City is required to maintain insurance coverage pursuant to MCL § 600.8101 in connection with the operation of the City's motor vehicles, as follows: (1) Claims for personal protection benefits as provided by MCL § 500.3107 and MCL § 500.3108, for which insurance coverage is required by MCL § 500.3101(1), shall be paid in full, to the extent valid, provided, however, that the City will not be liable for or pay interest or attorneys' fees under MCL § 500.3142 or MCL § 500.3148 on prepetition Claims for personal protection benefits . . . . [6]     The   record   contains   two

---

[6] In *In re City of Detroit*, 548 BR 748, 756-757 (Bankr ED Mich, 2016), the bankruptcy court indicated as follows:

-4-

certificates from the Department of Insurance and Financial Services indicating that the city qualified as a self-insurer as to all vehicles owned or registered by the city. The first certificate covers the period of June 9, 2013, to June 9, 2014, and the second certificate covers the period of August 9, 2014, to June 9, 2014, reflecting a two-month lapse in which the city was apparently not self-insured, which lapse ended with the execution of the MOU.

On September 10, 2015, the trial court held a hearing on the city's motion for summary disposition. Ruling from the bench in cursory fashion, after cutting off plaintiff's counsel mid-argument shortly after he begun, the trial court stated:

> I'm granting the motion for summary disposition. The notice to the City should have been made – it was made previously in her other accident.[7] The two reports that were made to the police department and the transit department do not serve as notice to the City that a person is making a claim for no-fault benefits. At most, I think it gives the City a potential – a notice of potential claims. So I'm granting the motion for summary disposition.

The trial court did not specifically address the bankruptcy component of plaintiff's argument, and the logic of the court's observation that the reports gave the city "a notice of potential claims" escapes us, considering that summary disposition was granted in favor of the city.

An order granting the city's motion for summary disposition for the reasons stated on the record was entered on September 18, 2015, and on November 5, 2015, the court denied plaintiff's motion for reconsideration. In plaintiff's motion for reconsideration, she flushed out her bankruptcy argument, contending that, pursuant to 11 USC 108(c), the automatic stay had

---

> Over 300 first party no-fault claims for personal protection benefits were filed against the City in this bankruptcy case, relating to accidents that occurred prior to the July 18, 2013 petition date. After negotiating with the State of Michigan over how to treat these claims while maintaining the ability to self-insure its vehicles, the City agreed to pay 100% of the personal protection benefits for "valid prepetition Claims," but the State agreed to allow the City to forego payment of interest or attorney fees for any overdue payments on these claims normally required by [statute] . . . . The settlement was incorporated into the City's confirmed Plan [in Article IV, § S, pp 62-63].

The bankruptcy court noted that the confirmed Chapter 9 plan was entitled the "Eighth Amended Plan for the Adjustment of Debts, which was confirmed on November 12, 2014[,]" and "became effective on December 10, 2014." *Id.* at 751.

[7] A few years earlier, plaintiff had settled a claim with the city for no-fault benefits in the amount of $18,000 relative to another accident, and part of her action here included an assertion that her preexisting injuries were exacerbated by the bus accident.

tolled the one-year statute of limitations in MCL 500.3145(1), rendering her action timely. Plaintiff appeals as of right.

We review de novo a trial court's ruling on a motion for summary disposition, as well as issues of statutory construction and other questions of law. *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 566-567; 702 NW2d 539 (2005). Summary disposition is appropriate under MCR 2.116(C)(7) when an action is barred by a "statute of limitations."[8] MCL 500.3145(1) provides:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury.

In *Devillers*, 473 Mich at 574, the Michigan Supreme Court summarized MCL 500.3145(1), observing:

> [Section] 3145(1) contains two limitations on the time for filing suit and one limitation on the period for which benefits may be recovered:

---

[8] In *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), this Court noted the general principles applicable to motions brought under MCR 2.116(C)(7):

> Under MCR 2.116(C)(7) . . ., this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [Citations omitted.]

"(1) An action for personal protection insurance [PIP] benefits must be commenced not later than one year after the date of accident, *unless* the insured gives written notice of injury or the insurer previously paid [PIP] benefits for the injury.

(2) *If* notice has been given or payment has been made, the action may be commenced at any time within one year after the most recent loss was incurred.

(3) Recovery is limited to losses incurred during the one year preceding commencement of the action."

Thus, although a no-fault action to recover PIP benefits may be *filed* more than one year after the accident and more than one year after a particular loss has been incurred (provided that notice of injury has been given to the insurer or the insurer has previously paid PIP benefits for the injury), § 3145(1) nevertheless limits *recovery* in that action to those losses incurred within the one year preceding the filing of the action. [Citations omitted; alterations in original.]

Examining the notice-of-injury provision in MCL 500.3145(1), our Supreme Court in *Welton v Carriers Ins Co*, 421 Mich 571, 579; 365 NW2d 170 (1984), overruled on other grounds by *Devillers*, 473 Mich 562 (rejecting application of judicial tolling doctrine to statute), stated:

Notice of injury simply informs the insurer of "the name and address of the claimant," "the name of the person injured and the time, place and nature of his injury." MCL 500.3145(1). Until a specific claim is made, an insurer has no way of knowing what expenses have been incurred, whether those expenses are covered losses and, indeed, whether the insured will file a claim at all. It is therefore illogical to expect the insurer to formally "deny" an as yet unperfected claim.

In *Perkovic v Zurich American Ins Co*, 312 Mich App 244; 876 NW2d 839 (2015), a custodian of records with a medical center sent the injured plaintiff's medical records and a medical bill for services to the defendant no-fault insurer, and the documents contained all of the information outlined in MCL 500.3145(1) with regard to a notice of injury. The *Perkovic* panel, however, concluded that the medical records and bill did not suffice for purposes of satisfying the notice-of-injury provision in MCL 500.3145(1), ruling as follows after an exhaustive review of precedent:

In this case, . . . no letter or written notice form was sent that would alert defendant to the possible pendency of a no-fault claim. Rather, the medical bill and medical records were sent to defendant without any indication of a possible claim. In fact, according to [the custodian], the bill and records were sent for the purpose of obtaining payment. This notice of injury, which was unrelated to a possible claim for no-fault benefits, did not trigger defendant's investigative procedures or advise defendant of the need to appropriate funds for settlement.

-7-

Similar to the death certificate in *Heikkinen* [*v Aetna Cas & Surety Co*, 124 Mich App 459, 464; 335 NW2d 3 (1983)], the medical bill and medical records, although sufficient in content, did not fulfill the purposes of the statute. Accordingly, plaintiff did not provide sufficient notice pursuant to MCL 500.3145(1), and the trial court properly granted summary disposition in favor of defendant. [*Perkovic*, 312 Mich App at 258 (citation omitted).]

We note that our Supreme Court in *Perkovic* scheduled oral argument to determine whether to grant the plaintiff's application for leave to appeal, directing the parties to address "whether the plaintiff, or someone in his behalf, satisfied the notice requirements of MCL 500.3145(1)." *Perkovic v Zurich American Ins Co*, 499 Mich 935; 878 NW2d 885 (2016). Oral argument was held in December 2016, and a ruling is pending.

Here, the city itself, through its own investigation, generated the document containing the information specified in the notice-of-injury provision in MCL 500.3145(1), as opposed to the information flowing to the insurer from a third party, which was the case in *Perkovic*. However, under the analysis and reasoning in *Perkovic*, the city's investigation report cannot be viewed as alerting the city of the possible pendency of a no-fault claim by plaintiff. If receipt by an insurer of medical records and bills containing information concerning an injured person's name and address and the time, place, and nature of the injury does not suffice as being indicative of a possible claim, we do not see how the investigation report in this case can be deemed to satisfy MCL 500.3145(1). Preparation of the investigation report was a perfunctory procedural exercise undertaken by the city, absent any express reference in the document to insurance, policies, or possible no-fault claims. The context in which the investigation report was prepared did not necessarily suggest that no-fault claims were on the horizon with respect to all of those individuals identified in the report as having been injured. Some of those injured may have had their own personal no-fault insurance policies, which would have placed the city's coverage second in priority. See MCL 500.3114(1) and (2). And plaintiff, herself or through counsel, did not supply any timely written communication about the accident to the city, let alone timely correspondence indicating a possible no-fault claim. While we question whether the analysis in *Perkovic* requiring written notification *of a possible claim*, going beyond the insurer's mere receipt of the information outlined in MCL 500.3145(1), is consistent with the plain language of the statute, the opinion is binding and must be followed by this panel. MCR 7.215(J)(1).[9] In sum, pursuant to governing law, we hold that plaintiff was not entitled to utilize the notice-of-injury provision in MCL 500.3145(1) in her effort to avoid the standard one-year limitations period.

---

[9] A sound argument can be made that an insurer who obtains written information that an insured was injured in an accident, listing the insured's name and address and the time, place, and nature of the injury, *has necessarily received notice of a possible claim.* Additionally, the notice-of-injury provision in MCL 500.3145(1) does not expressly state that the written notice must alert the insurer of a possible claim.

Turning to the bankruptcy issue, we first reiterate the timeline of events: (1) the bus accident occurred on June 11, 2013; (2) on July 18, 2013, the city filed for bankruptcy under Chapter 9 of the Bankruptcy Code, 11 USC 109(c); (3) plaintiff submitted an application for PIP benefits, dated June 2, 2014, to the MACF; (4) the city's certificate qualifying it as a self-insurer relative to city vehicles expired on June 9, 2014; (5) by correspondence dated July 16, 2014, plaintiff was informed by the MACF that her claim was denied; (6) on August 8, 2014, the MOU between the city and the state regarding the city's agreement to process no-fault claims was executed; (7) the city again became certified as a self-insurer in regard to city vehicles on August 9, 2014; (8) plaintiff submitted a claim for PIP benefits to the city on October 6, 2014, via email by her attorney using the old MACF application; (9) on November 12, 2014, the bankruptcy court confirmed the city's plan of adjustment that incorporated the MOU; (10) the confirmed plan of adjustment became effective on December 10, 2014; and (11) on December 22, 2014, plaintiff filed her lawsuit against the city.

11 USC 362 provides in relevant part:

> (a) Except as provided in subsection (b) of this section [inapplicable], a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of--

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

> * * *

> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

And with respect to bankruptcy petitions filed under chapter 9 of the Bankruptcy Code, 11 USC 922 provides in pertinent part:

> (a) A petition filed under this chapter operates as a stay, in addition to the stay provided by section 362 of this title, applicable to all entities, of--

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor[.]

"[A]ctions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v Pettibone Mich Corp*, 990 F2d 905, 911 (CA 6, 1993). Accordingly, when the city filed its petition for Chapter 9 bankruptcy protection on July 18, 2013, a little more than a month after the accident, an automatic stay went into effect under 11 USC 362 and 922. 11 USC 108(c) provides:

Except as provided in section 524 [discharges] of this title, if applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of--

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362 [or] 922 . . . of this title, as the case may be, with respect to such claim.

In *Ashby v Byrnes*, 251 Mich App 537, 542-543; 651 NW2d 922 (2002), overruled in part on other grounds by *Mayberry v Gen Orthopedics, PC*, 474 Mich 1; 704 NW2d 69 (2005), this Court examined and construed the language in 11 USC 108(c), ruling as follows:

Here, the language of the statute is clear and unambiguous. Plaintiffs had two years under the "applicable nonbankruptcy law," i.e., the Michigan statute of limitations, to file their medical malpractice claim. That period ended "on or after the commencement of the [bankruptcy] case," during the pendency of that case, on October 26, 1997. Thus, under subsection 108(c)(2), plaintiffs were provided a thirty-day grace period to file their medical malpractice claim after the lifting of the automatic stay of bankruptcy.

We find plaintiffs' argument that the bankruptcy stay itself tolls the Michigan period of limitation to be inconsistent with the language of 11 USC 108(c). The main clause of that section clearly indicates that "applicable nonbankruptcy law" must be the source of a "period for commencing . . . a civil action" in order for the section to apply. We conclude that, consistent with that directive, questions regarding whether "any suspension of such period" has occurred under 11 USC 108(c)(1) must similarly be determined using applicable nonbankruptcy law. As an example, the period of limitation for malpractice actions may be tolled as a result of the prefiling notice provisions. In such instances, 11 USC 108(c)(1) allows an action to be filed after a bankruptcy stay is lifted, if, as a result of the suspension of the running of the statutory period of limitation pursuant to state law, the period of limitation has not expired when the stay is lifted. Alternatively, 11 USC 108(c)(2) provides that, regardless of the expiration during the bankruptcy stay of a limitation period fixed by any statute of limitation or similar nonbankruptcy law, order or agreement, claimants have thirty days from the termination of that stay to bring an action. [Citations omitted.]

Here, as indicated earlier, MCL 500.3145(1) actually contains two limitations periods – (1) a straightforward one-year statute of limitations running from the date of the accident and (2), where a timely notice of injury was submitted or a PIP payment was actually made, a one-year statute of limitations running from the date of the most recent loss. *Devillers*, 473 Mich at 574.

Plaintiff solely argues that 11 USC 108(c)(2) (allowing a lawsuit to be filed within "30 days after notice of the termination or expiration of the stay") applies in connection with the one-year limitations period running from the date of the accident, thereby rendering her December 2014 lawsuit timely.[10] Plaintiff, however, does not offer a date, nor supporting evidence, showing when the automatic stay was terminated or expired in the city's bankruptcy case. Instead, plaintiff contends that the city failed to present documentary evidence that plaintiff's complaint was filed more than 30 days after the automatic stay had terminated or expired. However, the city submitted documentary evidence to support its summary disposition motion under MCR 2.116(C)(7), and plaintiff's bankruptcy theory under 11 USC 108(c) was not raised until her motion for reconsideration, so there was never any need for the city to supply evidence on the issue of the 30-day period set forth in 11 USC 108(c)(2).[11] The city's appellate argument on the bankruptcy issue is extremely cursory. The city simply claims that it was self-insured on the date that plaintiff submitted her no-fault application to the MACF; consequently, 11 USC 108(c) is inapplicable. Perhaps the city is maintaining that, regardless of the bankruptcy, plaintiff could have submitted a timely no-fault application to the city itself on the date that plaintiff filed one with the MACF. A major problem in this appeal is the woefully inadequate discussion by both parties concerning the bankruptcy's impact on this case.

Although the MOU and the dates on which it was executed, incorporated into the plan of adjustment, confirmed, and became effective for purposes of the bankruptcy proceedings may perhaps have a bearing on the analysis of 11 USC 108(c)(2) and the 30-day period relative to the date that plaintiff filed her complaint, plaintiff fails to develop any argument on the matter.[12] In *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998), our Supreme Court stated:

---

[10] It is clear that this one-year period ended *after* the commencement of the bankruptcy case and *during* the pendency of that case. 11 USC 108(c); *Ashby*, 251 Mich App at 542-543. We note that, in regard to the second statute of limitations in MCL 500.3145(1) predicated on a notice of injury, which is not being argued for purposes of 11 USC 108(c), plaintiff never provided the date of the most recent loss from which to start the one-year limitations period, making it impossible to determine when that limitations period would have elapsed, assuming a proper notice.

[11] An issue raised for the first time in a motion for reconsideration is not properly preserved for appellate review, thereby serving as another basis to reject plaintiff's bankruptcy argument in this case. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009).

[12] Plaintiff's complaint was filed on December 22, 2014, which was more than 30 days after the MOU was executed and incorporated into the plan of adjustment, as well as more than 30 days after the plan of adjustment was confirmed by the bankruptcy court, but the complaint was filed within 30 days of the bankruptcy court making the plan of adjustment effective. Again, 11 USC 108(c)(2) speaks of "termination or expiration of the stay," and plaintiff has not attempted to connect the MOU to termination or expiration of the stay with respect to no-fault suits against the city.

"It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." [Citation omitted.]

Accordingly, plaintiff's inadequately-briefed argument concerning the automatic stay and 11 USC 108(c)(2) has effectively been waived. Furthermore, we note the following statement by the bankruptcy court in *In re City of Detroit*, 548 BR 748, 751 (Bankr ED Mich, 2016):

[T]he City's liability on pre-petition claims was discharged when the Plan was confirmed on November 12, 2014, and became effective on December 10, 2014. Claimants holding pre-petition claims are enjoined from pursuing a recovery beyond what is provided for in the Plan.

As noted earlier in this opinion in the context of a supplemental summary disposition brief filed by the city, plaintiff failed to file a proof of claim in the bankruptcy court, leaving us to question whether, regardless of 11 USC 108(c), any claim that plaintiff may have held against the city was lost in bankruptcy and cannot be pursued. The city has not renewed this argument on appeal. We do not know the answer to our question, and plaintiff certainly has not explored the issue or supplied an answer. Indeed, it is unclear whether the city was *actually* rejecting notices of injury or refusing to process no-fault applications following its bankruptcy filing or whether any court actions for PIP benefits were being challenged by the city on the basis of the automatic stay. Again, plaintiff's appeal with respect to the bankruptcy issue has not been adequately and properly developed, resulting in a waiver of the issue.

Affirmed. Having fully prevailed on appeal, the city is awarded taxable costs under MCR 7.219.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Amy Ronayne Krause